WALLACE v. UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 118. Argued January 27, 1922.—Decided February 27, 1922.

1. The limitations sought to be imposed upon the President's power to remove an Army officer (118th Article of War, 39 Stat. 669; Rev. Stats., §§ 1342, 1230) do not apply when the removal is effected

by the President with the consent of the Senate, through the appointment of another to his place.   P. 544.

2. The court notices judicially that nominations to office are usually referred to a committee of the Senate—in this case the Military Committee—for investigation and report, and the duty of the committee to inquire into the existence of a vacancy to which the appointment can be made.   P. 546.

3. Where the President undertook to remove an Army officer and nominated another to take his place as of the day following the removal, without mentioning the removal, *held,* that the Senate, which confirmed the nomination, must be presumed to have known the confirmation would fill the legal complement of such officers and to have joined in the removal.   P. 545.

4. To allow pay for an officer whose place has been filled by nomination and confirmation, there must be special legislative authority.   P. 546.

5. *Quære:* Whether claimant lost his right to apply for a court-martial under Rev. Stats., § 1230, by waiting five months after his removal by the President?   P. 547.

55 Ct. Clms. 396, affirmed.

CLAIMING to be a Colonel in the Quartermaster Corps of the United States Army, the appellant sued in the Court of Claims to recover $6,580.67 salary and commutation of quarters from February 13, 1918, until March 12, 1919. His petition was dismissed.

The President, on the recommendation of the Secretary of War, issued an order dismissing the appellant from the service by General Orders No. 17, of February 13, 1918, of which he was notified on the same day. The United States was then at war with Germany. On March 1, 1918, the President sent to the Senate the following nominations:

"I nominate the officers herein named for promotion in the Army of the United States.

QUARTERMASTER CORPS.

To be Colonels.

Lieutenant Colonel Robert S. Smith, Quartermaster Corps, with rank from February 14, 1918.

Lieutenant Colonel Richmond McA. Scofield, Quartermaster Corps, with rank from February 23, 1918.

### To be Lieutenant Colonels.

Major Morton J. Henry, Quartermaster Corps, with rank from February 14, 1918.

Major William Elliott, Quartermaster Corps, with rank from February 23, 1918."

These officers were confirmed March 8, 1918. This filled the complement of 21 officers allowed by law in the grade of Colonel in the Quartermaster Corps.

On July 16 appellant made a formal application in writing for trial by court-martial, setting forth under oath that he had been wrongfully dismissed. On September 14, 1918, the trial was refused by the Secretary and no court-martial was convened.

Prior to June 24, 1918, plaintiff did not have knowledge of § 1230, Rev. Stats. He had been advised after his dismissal that he could seek relief through Congress.

*Mr. H. Stanley Hinrichs* and *Mr. Frank S. Bright* for appellant.

*Mr. Assistant Attorney General Ottinger,* with whom *Mr. Solicitor General Beck* and *Mr. Charles H. Weston,* Special Assistant to the Attorney General, were on the brief, for the United States.

MR. CHIEF JUSTICE TAFT, after stating the case, delivered the opinion of the court.

The President acted under the 118th Article of War, which provides in part (39 Stat. 619, 650, 669) that,

" No officer shall be discharged or dismissed from the service except by order of the President or by sentence of a general court-martial; and in time of peace no officer shall be dismissed except in pursuance of the sentence of a court-martial or in mitigation thereof."

This article is only a reënactment of the 99th Article of War contained in the Revised Statutes, § 1342. Both are, therefore, to be read with § 1230, Rev. Stats., which is as follows:

" When any officer, dismissed by order of the President, makes, in writing, an application for trial, setting forth, under oath, that he has been wrongfully dismissed, the President shall, as soon as the necessities of the service may permit, convene a court-martial, to try such officer on the charges on which he shall have been dismissed. And if a court-martial is not so convened within six months from the presentation of such application for trial, or if such court, being convened, does not award dismissal or death as the punishment of such officer, the order of dismissal by the President shall be void."

Appellant claims that by the failure to grant him a court-martial, his dismissal under § 1230 was rendered void *ab initio* and that he is still a Colonel.

The first question is whether he ceased to be a member of the Army by the nomination and confirmation of another which filled the complement of officers allowed by law in his rank. It is clear from the reasoning of this court in the case of *Blake v. United States,* 103 U. S. 227, that the words " by order of the President," in § 1230, Rev. Stats., *supra,* refer to a dismissal by the President alone, and do not include the removal of an officer by the appointment and confirmation of his successor.

Before the Civil War there was no restriction upon the President's power to remove an officer of the Army or Navy. The principle that the power of removal was incident to the power of appointment was early determined by the Senate to involve the conclusion that, at least in absence of restrictive legislation, the President, though he could not appoint without the consent of the Senate, could remove without such consent in the case of any officer whose tenure was not fixed by the Constitution.

The first legislative restriction upon this power was enacted March 3, 1865, by the very. provision we are here considering (13 Stat. 489), which subsequently became § 1230, Rev. Stats. Thereafter, on July 13, 1866, Congress took away altogether the power of the President to dismiss an officer of the Army or Navy in time of peace, except in pursuance of a court-martial sentence or in commutation thereof (c. 176, 14 Stat. 92). After that, in the controversy between President Johnson and the Senate, the tenure of office act was passed which cut down the power of the President to remove civil officers. Act of March 2, 1867, c. 154, 14 Stat. 430. The validity of these acts has never been directly passed on by this court in any case. The question has been expressly saved. *Parsons* v. *United States*, 167 U. S. 324, 339.

While, thus, the validity and effect of statutory restrictions upon the power of the President alone to remove officers of the Army and Navy and civil officers have been the subject of doubt and discussion, it is settled, *McElrath* v. *United States*, 102 U. S. 426; *Blake* v. *United States*, 103 U. S. 227; *Keyes* v. *United States*, 109 U. S. 336; *Mullan* v. *United States*, 140 U. S. 240, that the President with the consent of the Senate may effect the removal of an officer of the Army or Navy by the appointment of another to his place, and that none of the limitations in the statutes affects his power of removal when exercised by and with the consent of the Senate. Indeed the same ruling has been made as to civil officers. *Parsons* v. *United States*, 167 U. S. 324.

The question here, then, is whether the Senate joined the President in his removal of the appellant. That the President intended to separate him from the Army is, of course, plain. What are we to infer from the Senate's action in confirming appointments by the President which filled the complement of officers of the rank of appellant allowed by law? The appointment of Lieut. Colonel

Robert Smith was made two weeks after the announcement in General Orders of the dismissal of appellant and was made to confer the rank as of February 14th, the day after appellant was dismissed. The appointment did not say, as is usual in such cases, *vice* Wallace dismissed; but the facts of record in the War Department and in General Orders leave no doubt of the intention of the President and the Department in that regard. This raises the inquiry what we should presume as to the knowledge of the Senate in the matter. We can take judicial notice of the fact that nominations to office sent to the Senate are usually referred to the appropriate committee for investigation and report. In this case, the nomination would have been sent to the Military Committee which considers each appointment and is, of course, charged with the duty of inquiring into the existence of a vacancy to which an appointment can be made, as well as into its wisdom and propriety. Communication between the Department and the Committee dealing with such appointments is easy and frequent. We must presume, therefore, in the absence of any showing to the contrary, that the Senate was advised of the facts in respect to the nomination of Lieut. Colonel Smith and that it intended to supply the vacancy occasioned by the dismissal of appellant. Otherwise we must conclude that the Senate Committee was recommending, and the Senate was deliberately voting, confirmation of a nomination to a place for which there was no provision by law. We must assume that the confirming authorities knew the legal complement of Colonels in the Quartermaster Corps and how many they had already confirmed for that office. They must, therefore, have made inquiry and been assured as to the vacancy which would make Colonel Smith's nomination and rank from February 14, 1918, proper.

It is urged that if the dismissal of appellant was rendered void *ab initio,* as contended, the effect was to restore

him to office, and he was entitled to pay although the lawful complement of officers had been exceeded. To sustain this view, *Quackenbush* v. *United States,* 177 U. S. 20, is cited. It fails entirely to do so. On the contrary, it shows that in order to authorize pay for an officer whose place has been filled by nomination and confirmation of the Senate, there must be special legislative authority.

This is conclusive and renders it unnecessary to consider whether appellant lost his right to apply for a court martial under § 1230 by waiting five months, a question not free from doubt, considering the exigencies and need for dispatch in time of war. See *Norris* v. *United States, ante,* 77, and *Nicholas* v. *United States, ante,* 71.

The judgment of the Court of Claims is

*Affirmed.*