# Removal of the Assistant Secretary of Commerce by the Appointment of a Successor

The removal from office of the Assistant Secretary of Commerce can be properly effected merely by the appointment of a successor by the President with the advice and consent of the Senate.

June 10, 1935

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

In accordance with your request I have considered the question whether the removal from office of Assistant Secretary of Commerce Mitchell can be effected by the appointment by the President of his successor and confirmation of the appointment by the Senate.

It appears that Mr. Mitchell was appointed to the office of Assistant Secretary of Commerce by the President by and with the advice and consent of the Senate pursuant to section 8 of the Act of May 20, 1926, Pub. L. No. 69-254, 44 Stat. 568, 573. This section in no wise restricts the authority of the President to remove an incumbent from such office. It is understood that the resignation of Mr. Mitchell has been requested but that he has declined to resign, and that the President desires, if it can legally be done, to remove him from office merely by the appointment of his successor.

The question involved was considered by the Supreme Court of the United States in *Ex Parte Hennen*, 38 U.S. (13 Pet.) 230 (1839). That case involved the validity of the appointment of a clerk of the District Court of the United States for the Eastern District of Louisiana by the Judge of the District Court. While Hennen was serving as clerk of that Court, to which office he had been duly appointed, the judge of the district court executed and delivered to John Winthrop a commission appointing him as clerk. Proceedings in mandamus were brought to require the judge to restore Hennen to the office. Discussing the effect of the appointment of Hennen's successor, the Court said:

> The law giving the District Courts the power of appointing their own Clerks, does not prescribe any form in which this shall be done. The petitioner alleges that he has heard and believes that Judge Lawrence did, on the 18th day of May, 1838, execute and deliver to John Winthrop, a commission or appointment as clerk of the District Court for the eastern district of Louisiana, and that he entered upon the duties of the office, and was recognised by the judge as the only legal clerk of the District Court. And in addition to this, notice was given by the judge to the petitioner, of his removal from the office of clerk, and the appointment of Winthrop in his place; all of which was amply sufficient, if the office was held at the discretion of the Court, The power vested in the Court was a continuing power; and the mere

> appointment of a successor would, per se, be a removal of the prior incumbent, so far at least as his rights were concerned. How far the rights of third persons may be affected is unnecessary now to consider. There could not be two clerks at the same time. The offices would be inconsistent with each other, and could not stand together.

*Id.* at 261.

The *Hennen* case is cited with approval in *Blake v. United States*, 103 U.S. (13 Otto) 227 (1880). In that case suit was instituted in the Court of Claims by Blake to recover the amount alleged to be due him by way of salary as post-chaplain in the Army from April 28, 1869, to May 14, 1878. On December 24, 1868, Blake wrote a letter of complaint which was treated by the Secretary of War as a resignation from office. His successor was appointed by the President and the appointment was confirmed by the Senate. Blake contended that at the time his letter was addressed to the Secretary of War he was insane to the extent that he was irresponsible for his acts, and consequently that his supposed resignation was inoperative and did not have the effect of vacating the office. The question passed upon by the Court was: "Did the appointment of Gilmore, by and with the advice and consent of the Senate, to the post-chaplaincy held by Blake, operate, *proprio vigore*, to discharge the latter from the service, and invest the former with the rights and privileges belonging to that office?" *Id.* at 230.

The Court answered the question in the affirmative, and in the course of its opinion stated:

> It results that the appointment of Gilmore, with the advice and consent of the Senate, to the office held by Blake, operated in law to supersede the latter, who thereby, in virtue of the new appointment, ceased to be an officer in the army from and after, at least, the date at which that appointment took effect,—and this, without reference to Blake's mental capacity to understand what was a resignation. He was, consequently, not entitled to pay as post-chaplain after July 2, 1870, from which date his successor took rank. Having ceased to be an officer in the army, he could not again become a post-chaplain, except upon a new appointment, by and with the advice and consent of the Senate.

*Id.* at 237.

This principle is also recognized in *Wallace v. United States*, wherein the Court states:

> While, thus, the validity and effect of statutory restrictions upon the power of the President alone to remove officers of the Army and Navy and civil officers have been the subject of doubt and discussion, it is settled, *McElrath v. United States*, 102 U.S. 426; *Blake v.*

> *United States*, 103 U.S. 227; *Keyes v. United States*, 109 U.S. 336; *Mullan v. United States*, 140 U.S. 240, that the President with the consent of the Senate may effect the removal of an officer of the Army or Navy by the appointment of another to his place, and that none of the limitations in the statutes affects his power of removal when exercised by and with the consent of the Senate. Indeed the same ruling has been made as to civil officers. *Parsons v. United States*, 167 U.S. 324.

257 U.S. 541, 545 (1922).

The practice of removing incumbents from office by the appointment of their successors by the President and the confirmation of such appointments by the Senate has existed from an early date. In *Myers v. United States*, Mr. Justice Brandeis, in his dissenting opinion, states:

> From the foundation of the Government to the enactment of the Tenure of Office Act, during the period while it remained in force, and from its repeal to this time, the administrative practice in respect to all offices has, so far as appears, been consistent with the existence in Congress of power to make removals subject to the consent of the Senate. The practice during the earlier period was described by Webster in addressing the Senate on February 16, 1835:
>
> > "If one man be Secretary of State, and another be appointed, the first goes out by the mere force of the appointment of the other, without any previous act of removal whatever. And this is the practice of the government, and has been, from the first. In all the removals which have been made, they have generally been effected simply by making other appointments. I cannot find a case to the contrary. There is no such thing as any distinct official act of removal. I have looked into the practice, and caused inquiries to be made in the departments, and I do not learn that any such proceeding is known as an entry or record of the removal of an officer from office; and the President could only act, in such cases, by causing some proper record or entry to be made, as proof of the fact of removal. I am aware that there have been some cases in which notice has been sent to persons in office that their services are, or will be, after a given day, dispensed with. These are usually cases in which the object is, not to inform the incumbent that he is *removed*, but to tell him that a successor either is, or by a day named will be, appointed." 4 Works, 8th ed., 189.

In 1877, President Hayes, in a communication to the Senate in response to a resolution requesting information as to whether removals had been made prior to the appointment of successors, said:

"In reply I would respectfully inform the Senate that in the instances referred to removals had not been made at the time the nominations were sent to the Senate. The form used for such nominations was one found to have been in existence and heretofore used in some of the Departments, and was intended to inform the Senate that if the nomination proposed were approved it would operate to remove an incumbent whose name was indicated. R.B. Hayes." 7 Messages and Papers of the President, 481.

Between 1877 and 1899, the latest date to which the records of the Senate are available for examination, the practice has, with few exceptions, been substantially the same. It is, doubtless, because of this practice, and the long settled rule recently applied in *Wallace v. United States*, 257 U.S. 541, 545, that this Court has not had occasion heretofore to pass upon the constitutionality of the removal clause.

272 U.S. 52, 259–61 (1926) (emphasis in original; footnotes omitted).

In footnote 28 of Mr. Justice Brandeis's dissenting opinion, it is stated:

Since the enactment of the Tenure of Office Act various forms have been used to nominate officials to succeed those whose removal is thereby sought. Examination of their use over a period of thirty-two years indicates that no significance is to be attached to the use of any particular form. Thus the nomination is sometimes in the form A.B. vice C.D. "removed"; sometimes it is "to be removed"; sometimes "removed for cause"; sometimes "whose removal for cause is hereby proposed."

*Id.* at 259–60.

In view of the foregoing, I am of the opinion that the removal of Mr. Mitchell from office can be properly effected by the appointment of his successor by the President and confirmation thereof by the Senate.

ANGUS D. MACLEAN
*Assistant Solicitor General*[*]

---

[*] Editor's Note: The version of this opinion in the Unpublished Opinions of the Assistant Solicitor General contains the following postscript: "Mr. Mitchell's commission contains no fixed term, according to my information, but provides that he is to hold 'subject to the conditions prescribed by law.'—A.D.M."