Madden, Judge,
delivered the opinion of the court:
Plaintiff, after a service in the Army which commenced in 1896, and was active except for a period from 1906 to 1916, during which he was on the retired list, was, on June 1, 1934, found by a Board of Medical Officers to be permanently ' incapacitated for active service as a result of such service. Plaintiff would normally have been retired by the President as a result of his found incapacity, but on June 29 of that year the Chairman of a Subcommittee of the House Committee bn Military Affairs wrote the Secretary of War requesting that no action be taken toward placing the plaintiff on the retired list until the Committee had completed its investigation. The reason for this request seems to have been that the Committee thought it had discovered indications of wrongdoing on plaintiff’s part. The report and recommendations of the Retiring Board were, as a consequence, merely filed in the War Department, and were never laid before the President for his action.
*336 On June 6,1935, plaintiff was indicted in the then Supreme Court of the District of Columbia, a trial court, for having in 1932, in violation of Section 203, Title 18, United States Code, received $1,500 for services rendered to a private corporation in connection with proposed legislation in which the corporation was interested. After a trial, the plaintiff was, on April 30, 1936, found guilty, and was, on May 8, 1936, sentenced to jail for six months and ordered to pay a fine of $1,000. He perfected an appeal to the United States Court of Appeals for the District of Columbia, which appeal had the effect of staying the enforcement of his jail sentence and fine.
Section 203, of the violation of which plaintiff was convicted, provides that one who commits the offense therein forbidden “shall be fined not more than $10,000 and imprisoned not more than two years; and shall moreover thereafter be incapable of holding any office of honor, trust, or profit under the Government of the United States.”
After plaintiff’s sentence on May 8, 1936, the Secretary of War on May 13 requested the opinion of the Attorney General as to plaintiff’s military status. The Attorney General on May 21 advised the Secretary that plaintiff had, on May 8, the date of the entry of judgment of his conviction and sentence, become immediately incapable of holding office notwithstanding the pendency of plaintiff’s appeal. 38 Op. A. G. 468, 474. In accordance with this opinion the War Department on May 28 issued Special Orders No. 127 in printed form announcing that plaintiff had “ceased to be an officer of the Army on May 8,1936.”
The President, on May 30, 1936, sent to the Senate for its advice and consent the nomination of Lieutenant Colonel Laubach to be colonel from May 9, 1936. On June 1, the Acting Secretary of War wrote to Senator Sheppard, Chairman of the Senate Committee on Military Affairs, stating that the nomination of Lieutenant Colonel Laubach was to fill the vacancy created by “the separation from the Army of Colonel Joseph I. McMullen * * * as of May 8,1936.” The writing further mentioned the judgment of conviction and sentence in plaintiff’s case in court, stated the purport of the Attorney General’s opinion, and enclosed a copy of it.
*337 The Senate, on June 8, 1936, confirmed the nomination of Lieutenant Colonel Laubach, and he was, on June 17, 1936, commissioned by the President as colonel, to rank from May 9,1936.
On May 21, 1938, more than two years after plaintiff’s1 sentence in the trial court, the United States Court of Appeals for the District of Columbia reversed the judgment of the trial court and remanded the case to that court for a new trial. McMullens. United States, 96 F. (2d) 574. On June 30, 1939, the prosecution was abandoned by the Government by the entry of a nolle prosequi in the trial court.
After the court proceedings had thus been terminated in plaintiff’s favor, plaintiff, on December 2, 1939, wrote the President requesting that he direct the Secretary of War to issue an order retiring plaintiff from the Army, (1) as of July 1, 1934, on account of physical disability, as found by an Army retiring board before that date, or (2) as of April 11,1936, on which date plaintiff had, as shown in finding 10, written, through the Judge Advocate General, to the Adjutant General requesting retirement after forty years’ service. Plaintiff, in his communication to the President, set out the facts concerning the reversal of his conviction by the Court of Appeals, and the nolle proseguí of his case by the Government. He asserted that his status thereupon reverted to what it would have been had he never been convicted and sentenced, but that the War Department had wrongfully persisted in treating his separation from the service as permanent, and unaffected by the subsequent reversal of the conviction.
The President sought the advice of the Attorney General who, in an opinion rendered May 14,1940, 39 Op. A. G. 437, advised the President that, whether or not the judgment of conviction and sentence against plaintiff in the trial court had permanently separated him from the Army, the appointment by the President of Colonel Laubach as plaintiff’s successor and the confirmation of that appointment by the Senate, had effectively removed plaintiff from his office. The President, pursuant to'this advice, refused the plaintiff’s request. The plaintiff is here suing for (1) $400 as the pay and allowance of a colonel on active duty in the Army *338 from May 9 to May 28, 1936, the period from his judgment of conviction and sentence on May 8, to the day when Special Orders No. 127, quoted in finding 12, were issued, stating that plaintiff had ceased, by operation of law, to be an officer of the Army on May 8; and (2) retired pay of $375 per month from May 29,1936, to date, as the pay of a colonel on the retired list with more than thirty years of service.
The questions in the case are (1) whether the lower court’s judgment that plaintiff had violated Section 203, Title 18, United States Code, immediately and permanently removed •him from his office, though the judgment was appealed from and, on that appeal, reversed; (2). whether plaintiff, when he applied for retirement for forty years’ service on April 11, 1936, had had forty years’ service within the meaning of the retirement statute, when, during some of the forty years, he had been on the retired list; and (3) whether, regardless of the effect of the judgment of- conviction, plaintiff was removed from his office by the appointment by the President of Colonel Laubach and the Senate’s confirmation of that appointment.
As to the first question, we think the plaintiff was, by the judgment of guilt, immediately and permanently removed from his office. The purpose of the disqualification provision of the statute is to purge from public offices those who violate the statute. If an appeal from a judgment of guilt were to have the effect of a stay of the operation of the disqualifying provision, the officer, though he had been adjudged guilty, would remain in office for an indefinite period, perhaps for the entire term of his office, pending the appeal. The effect on the public service would be harmful, and could not be cured by any operation of relation back which might be applied when and if the conviction was affirmed on appeal. The officer could, of course, be directed to restore the salary which he had received, or, perhaps, the salary could be withheld from him until the appeal was decided. But the more important thing, the occupancy of the office by a convicted person, and the effects of that occupancy upon the public service, would be irreparable. Even if the appeal, when decided, was successful, and the judgment of guilt was reversed, that would not mitigate the harm to the public service in *339 the interim. There would be little respect for the convicted public officer, while his- conviction stood unreversed, and the repute of the office would be correspondingly damaged. It seems then that the policy of the disqualifying statute requires immediate removal of the officer from his office. Cases in State courts, dealing with this question, are cited and discussed in 38 Op. A. G. 468.
Plaintiff urges that, even if conviction results in immediate removal and the public service is thus purged of the convicted officer, the officer should, if his conviction is later reversed, be treated as if he had been entitled to the office in the meantime, and be paid the salary and allowances of the office. That would be a possible partially reparatory solution, in a situation, for example, where the office remained vacant, so that by the fiction of relation back the convicted officer could be regarded legally as having held the office in the meantime, though he had not physically occupied it. But it would be quite impracticable in most cases, and in the instant one, to construe the disqualifying statute as intending that the office must be left vacant pending the appeal, to insure that there be an opening into which to fit the legal fiction of relation back, so that the erroneously convicted officer might at least receive the salary of which he had been deprived by the erroneous judgment. Posts in the Army, as well as other public offices, must be manned, even though hardships to individuals may result. And if a successor has legally and rightfully and actually occupied the office, it can hardly be said, even by the application of a fiction, that the erroneously convicted officer has also legally occupied it.
Plaintiff, then, would seem not to be entitled to pay from May 8, 1936, the date of the judgment of the trial court, to May 21, 1938, the date of the reversal of the judgment by the Court of Appeals. And we think plaintiff’s right is no stronger after the date of the reversal. As we have said, his right to the office was not merely suspended by his conviction and appeal. He was out of the office, and Colonel Laubach was in it. Colonel Laubach’s title to the office was the usual, permanent title, and there was no reason why he should have been ousted from it to repair a hardship to *340 plaintiff. If Colonel Laubach had been regarded as automatically demoted by plaintiff’s vindication, he would no doubt have found his former office filled by another, and a whole chain of demotions might have been necessary to make plaintiff’s former office available to him. Even if we are wrong in our conclusion as to the effect of plaintiff’s conviction as an immediate and permanent removal from his office, our answers to the other two questions would still preclude recovery by him.
We consider now plaintiff’s contention that when, on April 11, 1936, he made application to The Adjutant General for retirement for forty years’ service, he thereupon became a retired colonel, and hence the appointment of Colonel Laubach in May of that year was not to plaintiff’s then office, but to a vacant office from which plaintiff had retired a month before. It will be observed that this contention, if valid, would not affect our conclusion that plaintiff was separated from his office by operation of law, when judgment of conviction was entered against him. The statute would operate to separate an officer on the retired list from his office just as it would to separate an active officer from his office. Hence the Government’s first ground of defense would still be valid. However, as to the Government’s second ground of defense, that the appointment of Colonel Laubach to plaintiff’s office resulted in an effective dismissal of plaintiff from that office, that ground would be considerably shaken if we should conclude that plaintiff had, a month before the appointment of Colonel Laubach, vacated the office of an active colonel and passed to that of a colonel on the retired list.
The Government, in response, contends that plaintiff had not had forty years of service within the meaning of the Act of June 30, 1882, Ch. 254, Sec. 1 (22 Stat. 118; U. S. C., Title 10, Sec. 942), upon which he claimed his right to retirement. The Government urges that the ten years from 1906 to 1916 during which plaintiff was on the retired list, may not be counted to make up the required forty years. We think the Government’s contention is correct. Section 942 is as follows:
*341 When an officer has served forty years either as an officer or soldier in the regular or volunteer service, of both, he shall, if he make application therefor to the President, be retired from active service and placed on the retired list.
While a retired officer or soldier is, for some purposes., in the military service, United States v. Tyler, 105 U. S. 244. we think he is not in the service within the meaning of Section 942. It would be strange if an officer, many of whose years of “service” had been as a retired officer, could count all those years to make up forty, if he happened, at the end of the fortieth year, to he in active service, while another officer, with the same number of years of each kind of service, could not do so because he was in a retired status when the forty years ran out. It seems clear that the latter could not “be retired from active service and placed on the retired list.” The question has not heretofore been litigated, but the interpretation given to the section by the War Department has been in accord with the Government’s contention.
Since we think plaintiff was not qualified for retirement, we do not reach the further objections raised by the Government to this theory of plaintiff’s claim that (1) the plaintiff did not apply to the President, as the statute requires, but to the Adjutant General, and (2) even if plaintiff had been qualified and had made a proper application, he could not have acquired the status of a retired officer without affirmative action by the President placing him upon the retired list.
We consider now the third question stated above, viz., whether, regardless of the effect of the judgment of conviction, plaintiff was removed from his office by the appointment by the President of Colonel Laubach, and the Senate’s confirmation of that appointment. The second opinion of the Attorney General, 39 Op. A. G. 437, given after plaintiff’s conviction had been reversed by the Court of Appeals, and the prosecution had been abandoned by the Government, answered this question in the affirmative, as we have said above. Plaintiff disputes this conclusion, relying principally upon Article 118 of the Articles of *342 War. (U. S. C., Title 10, Sec. 1590). The text of that Article is as follows:
No officer shall be discharged or dismissed from the service except by order of the President- or by sentence of a general court-martial; and in time of peace no officer shall be dismissed except in pursuance of the sentence of a court-martial or in mitigation thereof; but the President may at any time drop from the rolls of the Army any officer who has been absent from duty three months without leave or who has been absent in confinement in a prison or penitentiary for three months after final conviction by a court of competent jurisdiction.
Since 1936 was in time of peace, the article on its face seems to support plaintiff’s position. But the Supreme Court has repeatedly held that the tenure of office statutes, enacted by Congress during its controversy with President Johnson about reconstruction policy, do not prevent the removal of an officer by the joint action of the President in appointing his successor and the Senate in ratifying the appointment. In Blake v. United States, 103 U. S. 227, and Wallace v. United States, 257 U. S. 541, the history of the statutes and the reasons for the interpretation which the Supreme Court has given them, are set out and will not be repeated here. According to these decisions, the opinion of the Attorney General was correct. Plaintiff urges that the President did not intend, by appointing his successor, and the Senate did not intend, by confirming that appointment, to dismiss him from the service, since both the President and the Senate thought that plaintiff was already separated from the service by the judgment of conviction against him. But in the Blake case the facts were similar in that regard, the President and the Senate thinking that Blake had effectively resigned before his successor was appointed, and Blake, in his suit for pay brought some years later, claiming that his purported resignation was void because he was insane when he offered it. Yet the court held that, whether Blake’s resignation was effective or void, he was superseded by his appointed successor and was no longer entitled to pay. The beliefs of the President and the Senate that they were filling an p.-sisting vacancy, rather than creating one and filling it by the same acts of appointment and confirmation, thus seem to be im *343 material. Hence this second ground relied on by the Government is also a valid defense to the plaintiff’s claim. Plaintiff is not entitled to recover. His petition will be dismissed.
It is so ordered.
Whitaker, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.