**James L. HAMLIN**

v.

**The UNITED STATES.**

**No. 251–67.**

United States Court of Claims.

March 15, 1968.

David Machanic, Washington, D. C., attorney of record, for plaintiff.  Pierson, Ball & Dowd, Washington, D. C., of counsel.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

DURFEE, Judge.

Plaintiff, a lieutenant in the Army, was convicted of bribery in a Federal District Court on July 11, 1958 and was notified by the Army that he, simultaneous with his conviction "ceased to be an

---

officer of the U. S. Army on 11 July 1958 under the requirements of * * * 18 U.S.C. § 202 (1952 ed.)." This section provides:

§ 202. Acceptance or solicitation by officer or other person.

Whoever, being an officer or employee of, or person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or agency thereof, or an officer or person acting for or on behalf of either House of Congress, or of any committee of either House, or of both Houses thereof, asks, accepts, or receives any money, or any check, order, contract, promise, undertaking, obligation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value, with intent to have his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, influenced thereby, shall be fined not more than three times the amount of such money or value of such thing or imprisoned not more than three years, or both; and shall forfeit his office or place and be disqualified from holding any office of honor, trust, or profit under the United States.

On March 17, 1961, the District Court dismissed the bribery information against plaintiff and others, withdrew their guilty pleas and "rescinded and set aside" their sentences on the ground that they had pleaded guilty to an illegal charge, and had been illegally sentenced under Rule 35 of the Federal Rules of Criminal Procedure.

On May 23, 1961, plaintiff applied to the Army Board for Correction of Military Records for reinstatement to active duty plus back pay and allowances from the date of his dismissal on the ground that the March, 1961 order of the District Court rendered his conviction void *ab initio*, and therefore he had never been legally dismissed from active duty or his officer commission.

We note that these facts are identical up to this point with the facts in Motto v. United States, 348 F.2d 523, 172 Ct. Cl. 192 (1965). Motto and Hamlin were co-defendants in the Federal bribery case, and their convictions were rescinded and set aside by the District Court in identical form.

Also noteworthy is the fact that Hamlin and Motto then both sought identical relief from the Army, i. e., reinstatement and back pay from the identical dates of dismissal to the date of correcting the record. However, Motto sought, *in the alternative*, a change from his original dismissal to an honorable discharge as of the date of the change by the Board. There is nothing in the record before us to indicate that plaintiff Hamlin requested such an alternative. However, the action of the Correction Board and the Secretary, on Hamlin's application, was substantially different from their action on Motto's application. On November 8, 1963, plaintiff Hamlin was notified that his record was corrected to show that on July 11, 1958 (the date of his illegal conviction and separation from service) he was discharged "under a certificate of Honorable Discharge" as of that date.[1] Motto's record was corrected by the same Board, the same Secretary, and under the same facts of record to show that "the termination of his com-

---

1. "Having considered the findings, conclusions and recommendations of the Army Board for Correction of Military records, and under the provisions of 10 U.S.C. 1552, it is directed:

"1. That all of the Department of the Army records of James L. Hamlin be corrected to show that on 11 July 1958 he was discharged from the Army of the United States and from the Reserve of the United States under a certificate of Honorable Discharge.

"2. That the Department of the Army issue to James L. Hamlin a certificate of Honorable Discharge dated 11 July 1958.

/s/ Stephen Ailes
Under Secretary of the Army"

mission and his status in the active military service on 11 July, 1958, were, and are, *null and void and of no force and effect."* [Emphasis supplied.]

The record does not furnish any different facts or basis upon which the Secretary took different action in these two cases. The facts of record before the Board and the Secretary, as herein alleged in both cases, were identical.

■ From the record in both *Motto,* supra, and the instant case, it is clear that the original dismissal of both Motto and Hamlin was based upon the Federal bribery statute, 18 U.S.C. § 202, which provided for forfeiture of Federal office upon conviction thereunder. The Army thereupon dismissed them both, without administrative discharge under pertinent Army regulations or court-martial, but solely upon the basis of a conviction under the bribery statute which required dismissal as a matter of law. When the District Court rescinded the conviction, the dismissal of plaintiff by the Army became just as "null and void" as Motto's dismissal from the Army. If there was no valid conviction *under the bribery statute,* there could be no valid forfeiture *under the bribery statute;* both were null and void. Nevertheless, the Secretary made no final finding at all concerning the validity of plaintiff's original dismissal from the service, but merely stated that he was honorably discharged retroactively on the same date as his court conviction,—July 11, 1958.

Plaintiff's dismissal in this manner could not be retroactively justified as a matter of the Secretary's discretion. Not only was plaintiff's dismissal null and void; he was never given an administrative hearing prior to his involuntary release from active duty, as required by regulation.[2] Defendant cannot justify plaintiff's summary release under the overall discretionary power of the Secretary, because this power has been circumscribed by the regulation requiring a hearing under such circumstances. The Secretary was bound by his own regulations.[3]

■ Accordingly we will construe the action of the Secretary in giving plaintiff an honorable discharge, as a finding *by clear legal implication* that plaintiff's original dismissal under the bribery statute was null and void. This is what he found *expressly* as to Motto's dismissal. To all legal purpose and effect, the instant case is the same as *Motto,* and what the court said in *Motto,* is equally applicable here. Accordingly, we conclude that the action of the Secretary in dismissing plaintiff with a retroactive honorable discharge was arbitrary, capricious and an abuse of discretion.

Defendant has cited McMullen v. United States, 100 Ct.Cl. 323 (1943), cert. denied 321 U.S. 790, 64 S.Ct. 786, 88 L. Ed. 1080 (1944) as controlling the question on the statute of limitations, but we find the same points of distinction here as the court found in *Motto,* 348 F.2d at p. 526, 172 Ct.Cl. at pp. 197–198:

McMullen brought suit in this court for back pay, asserting that the reversal of the conviction and the subsequent *nolle prosequi* acted to revert his status to what it would have been had he never been convicted; that his separation from the service was not permanent, but had been affected by the reversal of conviction.

The court held that McMullen was by the judgment of guilt immediately and permanently removed from office. The subsequent reversal did not affect plaintiff's removal from office; the policy of the disqualifying statute required immediate permanent removal of the officer from his office.

*We believe the facts in McMullen are inapposite to the present case.* In

2. (AR 635–105A, in effect at the time of plaintiff's dismissal.)

3. Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012; Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

*McMullen* there was no ruling by the Secretary of the Army or any other authority that the termination of plaintiff's commission was null and void and of no force and effect. In the case at hand, the Secretary of the Army has so ruled. The issue as to whether plaintiff's original dismissal from the Army was valid or effective is no longer in contention as it was in *McMullen*. We have here the specific ruling that plaintiff's dismissal was null and void. The problem before us is the determination of the date of dismissal. [Emphasis supplied]

Plaintiff could not, under any circumstances, have obtained the relief to which he was entitled, except by first going to the Correction Board and the Secretary for correction of his records; this remedy here was not permissive, but mandatory. As the court said in *Motto*, supra, 348 F.2d at p. 527, 172 Ct.Cl. at p. 200:

In the past, this court has held that plaintiffs, whose original discharges were invalidated, could not be legally discharged until the date of action correcting the illegal or wrongful discharges. Cf., Boruski v. United States, 155 F.Supp. 320, 140 Ct.Cl. 1 (1957); John T. Egan v. United States, 158 F.Supp. 377, 141 Ct.Cl. 1 (1958). We feel disposed to follow that rule in this case. Plaintiff Motto could not have been legally discharged at least until the decision of the Under Secretary. * * *

Defendant also contends that the cause of action accrued on March 17, 1961, when the District Court vacated plaintiff's conviction, and that plaintiff's claim is barred by our six-year statute of limitations, citing Friedman v. United States, 310 F.2d 381, 159 Ct.Cl. 1 (1962), cert. denied, Lipp v. United States, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). Friedman's claim is not directly in point since it involved eligibility for disability retirement where the Correction Board merely reviewed an adverse determination by the Retiring Board.

The court held that under those facts, the Correction Board's adverse decision did not give rise to a new cause of action, but also stated in reviewing the question of the applicability of the statute of limitations in other cases, 310 F.2d at p. 392, 159 Ct.Cl. at pp. 18–19:

* * * Either the Retiring Board or the Correction Board is a proper board to perform this function of advising the Secretary; and where a Retiring Board has not been had or requested, the officer's application to the Correction Board together with the action of that Board take the place of the Retiring Board's function in triggering the statute of limitations. The Correction Board becomes the first proper board to act (or to be asked to act) on the matter, and the claim does not ripen until that Board's action is final. The single judicial claim—not a *new* cause of action—never accrues (under the general principles discussed supra) until the Correction Board's decision. In that sense the Correction Board proceeding becomes a mandatory remedy; without it, the case in this court would be dismissed as premature on the ground that the plaintiff did not seek or obtain a final decision within the administrative hierarchy.

In the instant case, the Correction Board was the first board to consider plaintiff's claim, and the case is governed by Harper v. United States, 310 F.2d 405, 159 Ct.Cl. 135 (1962), in which the court distinguished the facts from those in *Friedman*, supra, and held that, since Harper did not have a Retiring Board, his claim for disability retirement accrued when the Correction Board acted.

We conclude that plaintiff's claim is not barred by the statute of limitations, and he is entitled to back pay from the date of his illegal discharge on July 11, 1958 until his service was terminated by the order of the Secretary on October 16, 1963. In addition to active duty pay, plaintiff is also entitled to readjustment pay.

Accordingly, plaintiff's motion for summary judgment is granted and defendant's cross motion is denied. Judgment is entered for plaintiff with the amount of recovery to be determined in accordance with Rule 47(c).

NICHOLS, Judge (concurring):

It seems quite apparent to me that in the enactment of 18 U.S.C., Sec. 202, quoted in the court's opinion, the Congress did not intend that anyone should forfeit his office or place, or be disqualified from holding any office of honor, trust or profit, unless such person was guilty of the offense of bribery, therein defined. Nevertheless, from the holding of this court in McMullen v. United States, 100 Ct.Cl. 323 (1943), cert. denied 321 U.S. 790, 64 S.Ct. 786, 88 L.Ed. 1080 (1944), a strange doctrine has come down to us that under certain circumstances persons completely innocent of the offense of bribery may be subject to the forfeiture and disqualification prescribed in the statute. I do not see how anything so obviously repugnant to the Congressional purpose can be persisted in.

*McMullen* was decided in 1943. In 1946 the United States Supreme Court gave a contemporary effect to the rule against bills of attainder, a type of legislation most of us had supposed to be of historical interest only. The case was United States v. Lovett, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946). On the basis of that decision, I do not have any doubt that this court in *McMullen* had given an unconstitutional interpretation to Sec. 202. The Congressional enactment struck down in the *Lovett* case convicted Lovett of certain offenses without trial and sentenced him to forfeiture of office. Section 202 likewise, as construed in *McMullen,* sentences persons to forfeiture of office without regard to whether they are validly convicted of any offense. It appears to me, therefore, that the *Lovett* case requires a re-examination of *McMullen* and requires its rule to be reconsidered, consistent with all the respect we may entertain for *stare decisis.* The statute should now receive a constitutional reinterpretation.

In my opinion, the plaintiff should not have had to go to the Board For Correction of Military Records, and the Secretary could and should have restored his Commission immediately upon his being informed of the action of the District Court rendering plaintiff's conviction null and void. The conviction was then void for all purposes and could not be made any more so by the fiat of any official or body. Certainly persons in plaintiff's position and future Service Secretaries should not be left with the impression that it is in future necessary to go through any form of ritual in order to avoid the attainder prescribed by *McMullen.*

However, courts can and frequently do limit the retroactive effect of their decisions. When plaintiff went to the board, *McMullen* was on the books and for all he knew, we would follow it with devoted zeal. He, therefore, acted reasonably and prudently in exhausting his administrative remedy with the Board before bringing suit. I would limit the retroactive effect of the holding I would make to the extent that up to today, but not afterwards resort to the Board was a prerequisite to bringing suit. Otherwise our plaintiff would be barred by the statute of limitations, which in the circumstances would be most unjust.