# Nominations for Prospective Vacancies on the Supreme Court

Under Article II, § 2, cl. 2 of the Constitution, the appointment process for judges consists of three steps: nomination by the President, advice and consent of the Senate, and appointment by the President. A President may nominate, and the Senate may confirm, a person to an office in anticipation that the office will be vacant during the President's term of office. Confirmation without appointment does not confer any rights on the nominee; the President remains free to decide that he does not want to appoint a confirmed nominee. When the anticipated vacancy does not arise, no appointment of the confirmed nominee is possible.,

July 9, 1986

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This memorandum responds to your request for an opinion of this Office on whether the President may nominate, and the Senate may confirm, individuals for *prospective* vacancies on the Supreme Court. This issue arose in 1968 in connection with President Johnson's nominations of Justice Fortas to be Chief Justice and Judge Homer Thornberry of the Fifth Circuit to be Associate Justice. At that time, this Office prepared a legal opinion concluding that the President has the power to nominate, and the Senate has the power to confirm, in anticipation of a vacancy. *See* Department of Justice Memorandum re: Power of the President to Nominate and of the Senate to Confirm Mr. Justice Fortas to be Chief Justice and Judge Thornberry to be Associate Justice of the Supreme Court (July 11, 1968) (1968 Justice Department Memorandum), *reprinted in Hearings before the Senate Comm. on the Judiciary*, 90th Cong., 2d Sess., App. Ex. 1 (1968) (Hearings). We believe that the analysis and conclusion of the 1968 Justice Department Memorandum are still sound.

## I. The Senate's Consideration of a Nominee for a Prospective Vacancy is Consistent With the Appointments Clause

A prospective vacancy on the Supreme Court arises when a Justice announces his or her intention to retire on a specific date, or upon the qualification of a successor.[1] A prospective vacancy also arises when an incumbent Justice is nominated for elevation to a higher position, *i.e.*, to be Chief Justice. In any of these instances, the President has the power to nominate, and the

---

[1] 28 U.S.C. § 371(b) provides in relevant part that "[t]he President shall appoint, by and with the consent of the Senate, a successor to a justice or judge who retires." This section does not prescribe the procedures or timetable for such appointments.

Senate the power to confirm, in anticipation of the vacancy. This practice is entirely consistent with the constitutional plan. In addition, it advances the important goal of continuity in judicial administration.

Article II, § 2, cl. 2 of the Constitution provides that the President shall:

> nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law.

As explained in *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 153–57 (1803), the constitutional appointment process consists of three major steps: (1) the nomination by the President; (2) the Senate's advice and consent; and (3) the appointment by the President, of which the appointee's commission is merely the evidence. Each step is essential to assumption of authority by the officer or Justice, as the case may be. *Id.*[2] Thus, as a constitutional matter, nothing precludes the nomination and confirmation of a successor while the incumbent still holds office. Confirmation does not confer any rights on the nominee; the President remains free to decide that he does not want to make the appointment, which is not legally completed until the execution of the commission. *See, e.g.*, Memorandum for John D. Calhoun, Assistant Deputy Attorney General from Robert Kramer, Assistant Attorney General, Office of Legal Counsel (Apr. 7, 1960).

This practical interpretation of the Constitution is supported by a line of Supreme Court cases holding that appointment by and with the advice and consent of the Senate of a successor to a removable officer has the effect of displacing the incumbent. *Wallace* v. *United States*, 257 U.S. 541, 545 (1921); *Mullan* v. *United States*, 140 U.S. 240, 245–46 (1891); *McElrath* v. *United States*, 102 U.S. 426, 438–39 (1880); *Blake* v. *United States*, 103 U.S. 227, 236–37 (1880). In these cases, the Court assumed that the preliminary steps of nomination and confirmation to an office may take place before the office is vacant. Consistent with this interpretation, the President may nominate, and the Senate may confirm, a person to an office in anticipation that the incumbent will be elevated to another office. If the Senate later fails to confirm the incumbent for his new position, thereby preventing the creation of a vacancy, the appointment, of course, cannot go forward. *See* Memorandum for the

---

[2] *See also* 4 Op. Att'y Gen. 217, 219–20 (1843):

> The nomination is not an appointment; nor is that nomination followed by the signification of the advice and consent of the Senate, that it should be made sufficient of themselves to confer upon a citizen an office under the constitution. They serve but to indicate the purpose of the President to appoint and the consent of the Senate that it should be effectuated. To give a public officer the power to act as such, an appointment must be made in pursuance of the previous nomination and advice and consent of the Senate, the commission issued being the evidence that the purpose of appointment signified by the nomination has not been changed.

*See also* 12 Op. Att'y Gen. 32, 41–42 (1866); 36 Op. Att'y Gen. 382, 384–85 (1931).

Acting Attorney General from Frank M. Wozencraft, Assistant Attorney General, Office of Legal Counsel (Oct. 25, 1966).[3]

## III. Historical Practice Supports the Nomination and Consideration of Persons for Prospective Vacancies

In 1968, this Office set forth in detail the historical practice up to that time with regard to nominations of judges and Justices for prospective vacancies. For example, Justice Shiras submitted his resignation to take effect on February 24, 1903. On February 19, President Roosevelt nominated (a) Circuit Judge Day to be Associate Justice of the Supreme Court, *vice* Justice Shiras; (b) Solicitor General Richards to be Circuit Judge, *vice* Judge Day; and (c) Assistant Attorney General Hoyt to be Solicitor General, *vice* Solicitor General Richards. All three nominations were confirmed on February 23, 1903, one day prior to the effective date of Justice Shiras' resignation. 34 *Journal of the Executive Proceedings of the Senate*, 202, 215 (hereinafter "*Journal*"). Similarly, on June 2, 1941, Chief Justice Hughes announced that he would retire from active service on July 1. 313 U.S. v (1941). On June 12, President Franklin Roosevelt nominated Associate Justice Stone to be Chief Justice, and Attorney General Robert H. Jackson "to be an Associate Justice of the Supreme Court, in place of Harlan F. Stone, this day nominated to be Chief Justice of the United States." 87 Cong. Rec. 5097 (1941). The Senate confirmed Chief Justice Stone's nomination on June 27, and Associate Justice Jackson's nomination on July 7, 1941. 314 U.S. iv (1941). *See generally* 1968 Justice Department Memorandum.

On several occasions since 1968, the President has simultaneously elevated a sitting judge and nominated his replacement. For example, on December 11, 1974, President Ford nominated Judge William J. Bauer of the Northern District of Illinois to replace Judge Otto Kerner on the Seventh Circuit. On the same day, the President also nominated Alfred Kirkland to the seat vacated by Judge Bauer's elevation. 116 *Journal* at 805; *see also* 118 *Journal* at 592.[4] Moreover, successors to district court judges who have been elevated to the court of appeals have frequently been nominated while the Senate is still considering the nomination of the incumbent. On December 15, 1970, while the Senate Judiciary Committee was considering the nomination of Judge Wallace Kent to the Sixth Circuit, President Nixon nominated Albert Engel to fill Judge Kent's seat on the district court for the Western District of Michigan. Judge Kent's elevation was approved a few days later. 112 *Journal* at 680, 682. *See also* 118 *Journal* at 335, 534, 655.[5]

---

[3] For example, the Senate confirmed Judge Harold H. Greene to be Chief Judge of the District of Columbia Court of General Sessions, *vice* Judge John Lewis Smith, Jr., two days before it confirmed Judge Smith to be a District Judge of the United States District Court for the District of Columbia. *See* 112 Cong. Rec. 27397, 28086 (1966).

[4] As another example, on August 26, 1976, President Ford nominated John T. Copenhaver, Jr., *vice* Judge Kenneth Hall, to the district court for the Southern District of West Virginia, and Judge Kenneth Hall, *vice* Judge John Field, Jr., to the United States Court of Appeals for the Fourth Circuit.

[5] Similarly, on August 4, 1976, President Ford nominated John H. Moor II, *vice* Judge Peter Fay of the Southern District of Florida, while the Senate Judiciary Committee was considering Judge Fay's elevation to the Fifth Circuit. Both nominees were approved by the Committee a few days later.

In the 1968 hearings on the nominations of Justice Fortas and Judge Thornberry, Senator Ervin objected to the practice of nominating individuals for vacancies that will not take effect until the qualification of a successor. He argued that Chief Justice Warren had made his retirement contingent on the Committee's confirmation of Justice Fortas as his successor,[6] and that, therefore, there was no vacancy for the Chief Justiceship.[7] Senator Ervin apparently believed that a vacancy occurs only upon the announcement that a Justice will resign as of a date certain. *See* Hearings at 13, 16, 22–24.[8] He expressed the fear that if the President can nominate, and the Senate can confirm, a Justice in the absence of an existing vacancy, the President and an "agreeable" Senate could appoint Justices to take the place of any sitting Justice at such time as the latter retired, resigned, or died. *See* Hearings at 15. To this concern, Attorney General Clark responded that the Constitution permitted the President to make nominations in anticipation of a specific vacancy, although not for positions that will become vacant after his term of office expires. *Id.* at 15–16.

In our view, the President's constitutional power to nominate Justices for anticipated vacancies is limited only by his term of office. A President should not be permitted, as a constitutional matter, to make a prospective nomination for a vacancy that shall occur after his term of office expires because such a power would encroach upon the appointment power of his successor. *See* Memorandum for John D. Calhoun, Assistant Deputy Attorney General from Robert Kramer, Assistant Attorney General, Office of Legal Counsel (Apr. 7, 1960) (citing state court cases). However, no such limitation exists, in the absence of a specific statutory prohibition, where the President nominates an individual for a vacancy which shall occur during his term of office.

## Conclusion

For the above reasons, we perceive no constitutional impediment to nomination by the President, and confirmation by the Senate, of individuals for anticipated vacancies on the Supreme Court which shall occur during the President's term of office.

CHARLES J. COOPER
*Assistant Attorney General*
*Office of Legal Counsel*

---

[6] President Johnson accepted Chief Justice Warren's retirement effective upon the confirmation of a successor — not Justice Fortas in particular — although he submitted the nomination of Justice Fortas to be Chief Justice on the same day. 114 Cong. Rec. 18790 (1968). Chief Justice Warren stated to the press that he would stay on as Chief Justice if Justice Fortas were not confirmed. Some Senators expressed concern that the Chief Justice should not be given the power to determine his successor by conditioning his retirement upon his successor's confirmation. *See* Hearings at 35.

[7] Some members of the Committee refused to question Judge Thornberry on the ground that there was no vacancy on the Court. *See* Hearings at 250–51. Senator Ervin, however, participated in the questioning. *Id.* at 256. When Justice Fortas' nomination to the Chief Justiceship was withdrawn in October 1968, after the Senate failed to end a filibuster preventing a vote on his elevation, the prospective vacancy for which President Johnson had nominated Judge Thornberry was eliminated.

[8] No one on the Senate Judiciary Committee in 1968 questioned the President's power to nominate in anticipation of a vacancy to occur on a date certain.

111