Collins, Judge,
delivered the opinion of the court:*
This military pay case is before us on the merits. The detailed findings of fact which follow the opinion are here summarized only in pertinent part.
From 1952 until relieved on October 19,1959, plaintiff was serving- on active duty as a major in the Women’s Army Corps. Her category, effective November 1, 1956, was “indefinite.”
On May 14, 1959, the Chief of the Career Branch, WAC, recommended to the Department of the Army Active Duty Board (ADB) that plaintiff’s indefinite service agreement be revoked. The grounds asserted for revocation were plain *91 tiff’s mediocre efficiency record and several reprimands for recHess driving and indiscreet behavior in public places. On May 19,1959, the ADB refused to approve the revocation of plaintiff’s agreement.
The Chief of the Career Branch, however, renewed her recommendation to the ADB less than 2 months later on July 8, 1959. In that request it was stated that, from efficiency reports prepared by plaintiff, it appeared either that plaintiff was not competent to evaluate the performance of her subordinates or that good officers were deteriorating under her supervision. On July 16, 1959, the ADB advised that it had again considered plaintiff’s records and that plaintiff’s agreement had been revoked.
Consequently, plaintiff was honorably separated in the grade of major, AUS, on October 19, 1959. On January 14, 1960, she enlisted as a private in the Regular Army and continued to serve in an enlisted capacity until released in August 1964 for retirement as a lieutenant colonel in the Reserves.
Once before (on December 9,1959) her enlistment and once afterwards (on May 14, 1960), plaintiff wrote to the Adjutant General requesting reconsideration of her relief from active duty and reinstatement in her prior rank of major. In her first letter, plaintiff asked that her request be forwarded to the ADB. However, no reply was received to either letter until after the ADB action described below.
On June 8, 1960, the Chief of the Career Branch again requested reconsideration by the ADB of its decision of May 19,1959, that is, its first decision regarding plaintiff. In that decision, it will be remembered, the board had failed to approve the recommendation that plaintiff’s indefinite service agreement be revoked. Nowhere in the request for reconsideration or in the current record is there an explanation of the Career Branch’s reasons for seeking reconsideration of the first ADB action. Furthermore, this request for reconsideration did not mention the second ADB decision (in July 1959), nor the fact that plaintiff had been relieved from active duty, nor that she had enlisted in the Regular Army.
On June 24,1960, the ADB rendered a third decision concerning plaintiff. The board cryptically held that, after re *92 consideration of plaintiff’s records and with, “a majority of the members concurring [, the ADB] recommends her retention on active duty.”
The Deputy Chief of Staff for Personnel, Headquarters, informed the Adjutant General of this decision on the same day and advised that the ADB had, in effect, held that plaintiff should never have been relieved. Thereafter, on July 20, 1960, the Adjutant General responded to plaintiff’s above-mentioned letters, stating in his reply that the Army had no means by which to effect plaintiff’s reinstatement unless her records were to be changed by the Army Board for Correction of Military Eecords (ABOME) to show that she had not been released. Plaintiff was also informed that the Office of the Deputy Chief of Staff for Personnel would support her appeal to the board.
In proceedings initiated by plaintiff and conducted on September 14, 1960, the ABCME determined that, based on plaintiff’s efficiency reports, the action taken by the ADB on July 16,1959, in revoking plaintiff’s indefinite service agreement was proper. Accordingly, plaintiff’s application for the correction of her records was denied. A second application, filed in 1964, was also denied.
In this action plaintiff seeks to recover an amount equal to the active duty pay of a major with her length of service from the date of her discharge (October 19, 1959) until her retirement (September 1, 1964), less the pay she received as an enlisted person from the date of her enlistment (January 14, 1960) until the date of her retirement. No trial, in the usual sense of the word, has been held in this case. Instead, the evidence consists of numerous exhibits, a majority of them jointly filed, and a stipulation of facts.
Plaintiff asserts that the decision of the ABOME denying her application for the correction of her records was invalid and unauthorized, arbitrary, capricious, and unsupported by the evidence. Plaintiff’s contention is that the second decision of the ADB (rendered less than 60 days after the first) was invalid, since the applicable regulations provide that an officer’s records can be screened by the ADB only once annually. Since, it is argued, the regulations state that the *93 decision of the ADB is final, the ABOME was consequently bound to follow the ADB’s first decision and to correct plaintiff’s record.
The court finds that the decision of the ABOME was erroneous as a matter of law and that plaintiff is entitled to recover, but on a ground different from that asserted by plaintiff.
The relevant portions of AE 135-215,[1] one of two applicable regulations,[2] are as follows:
b. * * * Officers, other than Obligated Officers, may be relieved from active duty for the following reasons:
‡ $
(4) Failure to meet acceptable standards of efficiency or conduct.
The second regulation, AE 135-173,[3] states in pertinent part:
50. General. The records of officers on active duty, less those serving on term category commitments, will be screened annually, at Headquarters, Department of the Army, to determine those officers whose degree of efficiency and manner of performance of duty require relief from active duty or elimination from the service.
a. This screening process will be done 'at Headquarters, Department of the Army, the chiefs of arms and services based on annually prescribed guidance and criteria. The records of those officers recommended for relief from 'active duty will be referred to a board of *94 officers for review and determination; the decision of the board will be final. The cases of those officers recommended for elimination will be processed in accordance with AR 140-175 immediately following their relief from active duty.
* * * ❖ *
51, Action by commanding officers. Commanders at all echelons will submit through channels to The Adjutant General, Department of the Army, Washington 25, D.C., ATTN: AGG-Z, the names of those officers whose manner of performance of duty when compared with their contemporaries indicates a lack of justification for retention on active duty. Suoh submissions may be made at any time and will be accompanied by details of the reasons for recommendation for relief. These recommendations will be processed in accordance with paragraph 50a. [Emphasis supplied.]
It is noted at the outset that the authority of the ABCMR to correct military records is by virtue of 10 IT.S.C. § 1552 ('a) (1964) :
(a) The Secretary of a military department, under procedures established 'by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. Under procedures prescribed by him, the Secretary of the Treasury may in the same manner correct any military record of the Coast Guard. Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.
The statute plainly indicates that, within the bounds set thereby, 'the scope of the ABCMR’s authority is discretionary with the Secretary of the Army. The Secretary “may” correct errors “when he considers it necessary.” Consequently, the Secretary clearly may provide that the ABCMR will not consider applications for correction of records in situations where, in his opinion, the board’s intervention would be improper, duplicative, or otherwise unnecessary. In the instant *95 context, AE 135-173 expressly states that the decisions of the ADB are final.[4] When, as here, the Secretary has promulgated regulations which unequivocally entitle the decisions of a board other than the ABCME to finality, the ABCME is without authority to alter or review those decisions in any way and is bound by them.[5] And, of course, under familiar principles the Secretary’s discretion is limited by his own regulations while they remain in force.[6]
The question for decision, therefore, is which of the three determinations by the ADB is entitled to finality. If the action of July 16, 1959 (revoking plaintiff’s indefinite service agreement), was final, the ABCME obviously did not commit error in adhering to that decision. If, however, either the first or the third ruling of the ADB is controlling, the ABCME erred as a matter of law in not complying with the appropriate decision.
Plaintiff does not question the general authority of the ADB to act in such cases as hers. Moreover, she neither argues that the evidence before the ADB was insufficient to authorize her relief from active duty, nor questions the procedural validity of the manner in which the board conducted its proceedings. Instead, plaintiff relies upon the validity of the initial ruling of the board and argues that the decision revoking her agreement was invalid because the board had no authority to reconsider her case within 2 months after its first decision.
We find this contention unpersuasive. It is true that the regulations provide for an annual screening of records under annually prescribed criteria. But the clear import of the regulations was to guarantee that the records of each officer were screened at least annually — not to restrict the Army in re *96 leasing inefficient officers. Tbe requirement of a screening each year, instead of, for example, each. 6 months, was undoubtedly a choice based on administrative convenience and a consideration of the number of individual reviews entailed. The stated purpose of the screening is “to determine those officers whose degree of efficiency and manner of performance of duty require relief from active duty or elimination from the service.” The reason for conducting the screenings at headquarters, rather than at a lower level, is stated in one of the regulations:
(1) Records will be screened at the Department of the Army to insure maintenance of uniform standards of qualifications. * * *[7] [Emphasis supplied.]
Paragraph 51 of Alt 135-173 provides that commanders “at all echelons” may submit recommendations for relief from active duty “at any time.” It is further provided that the recommendations will be processed in accordance with paragraph 50a, that is, at headquarters under the established criteria. There is no indication, however, that such recommendations cannot be acted upon until a year has elapsed since the last screening of the individual’s records.
The Army has an unquestioned interest in the efficiency and capability of its officers. To hold that the Army cannot release from duty for a year those, officers whose abilities deteriorate in the period following the annual screening could adversely influence any operations with which those officers are connected.
From plaintiff’s point of view, there is no clear indication in the regulation that it was promulgated for the additional purpose of preventing undue harassment by commanding officers or otherwise to protect the officers screened. Undoubtedly, however, review by a board at headquarters level will serve to some extent to relieve the screening process of personal bias and prejudice. But the logical consequence of accepting plaintiff’s argument indicates that the regulation does not have the secondary purpose plaintiff assigns to it.
*97 Tbe ADB has general authority to revoke indefinite service agreements such as plaintiff’s.[8] The obvious motivation 'behind the Army’s interest in general service commitments of indefinite duration is the discretion such commitments allow in retaining or releasing personnel according to the needs of the service 'and the capabilities of the individuals involved. The existence of a contractual agreement for a tour of duty of fixed duration, however, can thwart the separation of an individual who, though not guilty of substantial misconduct warranting discharge, might demonstrate his unsuitability in several minor respects. Therefore, to hold that the ADB cannot review an individual’s records more often than once annually would, in effect, substantially convert indefinite service agreements into agreements for a series of 1-year tours. This result would completely subvert the purposes behind indefinite service agreements and render relatively meaningless the provision in paragraph 51 that officers are to submit recommendations for relief “at any time.” Accordingly, we hold that the regulation’s provision for annual screenings is merely permissive.
It is not clear whether plaintiff is treating the second ADB action as a reconsideration of the first or as a de novo proceeding. The action appeared to be a reconsideration in form. The Career Branch requested that approval be given to the previous request for revocation of plaintiff’s agreement. The board responded by stating that it had “again considered” plaintiff’s records. To the extent that plaintiff’s argument can be construed to say that the ADB was without authority to reconsider a prior decision, plaintiff’s contentions are without merit.
None of the Army officials who have commented upon the ADB’s second decision have suggested that reconsideration *98 per se was improper, nor lias the ABCMR. Nothing in the regulations governing the ADB suggests that reconsideration is unauthorized. In fact, the purpose we found implicit in paragraph 51 of AR 135-178 in the preceding discussion indicates that the regulation actually contemplates reconsideration actions by the ADB.
It is noted that although the ABCMR findings are final, subject to the approval of the Secretary of the Army, that board itself has the apparent authority to reconsider its previous decisions and in fact does so.[9] The decisions of the ADB, on the other hand, though final, apparently do not even require the Secretary’s approval. To deny an administrative board of last resort the right to reconsider its own prior decisions is unwarranted, in the absence of a controlling statute or regulation to the contrary.[10]
Administrative bodies performing judicial or quasi-judicial functions are, as courts, not infallible. The pervasive policy of the law in favor of the most prompt and inexpensive administration of justice compels the conclusion that reconsideration of a judgment is a proper function of such a body. Nothing has been presented by either party to indicate that the ADB should not be deemed to have the authority to reconsider its decisions, and we accordingly find it has such authority.
It is generally recognized, however, that requests for reconsideration will usually be considered only within a short or otherwise reasonable period of time after the initial decision.[11] But in this case, no rules have been promulgated by the ADB to govern post-judgment motions or requests. Moreover, the reasons behind not restricting the ADB to only annual screenings indicate that a fixed time limit of any *99 sort upon, reconsideration actions would inhibit the purposes of the regulations. The Army’s interest in the efficiency of its officers is continuous while the officers remain on active duty. In addition, the first decision, as we have in essence decided, did not irrevocably vest rights in the parties, either by entitling plaintiff to a year’s active duty or by obligating the Army to retain her for that period. There is consequently no reason to limit the period in which the ADB could entertain a request for reconsideration. Therefore, the second decision of the ADB, in which it reconsidered and reversed its prior refusal to revoke plaintiff’s agreement, was valid.
The last point to be considered is the effect the third action by the ADB (in June 1960) had upon the prior two. Pursuant to the decision of the ADB in July 1959 plaintiff was relieved from active duty. Although she had enlisted in the Begular Army in January 1960, she was not serving on active duty as an officer at the time any of her requests for reconsideration were made to the Adjutant General, nor at the time the Career Branch again requested reconsideration, nor at the time the third decision was rendered. The commissioner and, apparently, the ABCMR[12] believed consequently that the ADB was without jurisdiction to consider the applications for reconsideration and that the decision of the ADB in June 1960 was a nullity and without legal effect. Although the Government has not briefed this point,[13] counsel for the defendant expressed a similar view in response to questions during oral argument.
However, underlying a conclusion that the third decision of the ADB was without jurisdiction or was a nullity and advisory only is the assumption that the proceeding in June 1960 was de novo. The ADB would clearly have no legitimate authority on the basis of the regulations to consider db initio the records of someone no longer on active duty as an officer. *100 The facts, however, do not support a conclusion that the proceeding was de novo. On the contrary, it is quite clear that the third proceeding, as was the second, was intended as a reconsideration of the first.
The Chief of the Career Branch specifically requested the ABB to reconsider its May 1959 decision in plaintiff’s case. Although this request was made over a year 'after the Career Branch’s first recommendation of relief, it is unlikely that this action was intended to initiate the annual screening as such. Under paragraph 50 of AN 135-173, the screening would have taken place irrespective of the request had plaintiff still been on active duty as an officer. Consequently, it seems probable that the Career Branch was submitting its request for reconsideration pursuant to the authority in paragraphs 50a and 51 of the regulation.
The ADB, by letter dated June 24, 1960, advised the Career Branch that it had reconsidered plaintiff’s records and recommended her “retention” on active duty. All the evidence before us therefore points to the conclusion that the third ADB proceeding was a reconsideration of the first. Since a proceeding in reconsideration is predicated upon a former decision or judgment, it is not de novo, but is viewed as a continuation of the initial action. It suspends the finality of the initial decision pending a ruling on the request for reconsideration.[14]
There is the further question, however, of determining whether a reconsideration of its first decision by the ADB— approximately 13 months after that decision and some 11 months after the second action — was proper.[15] As this court has stated:
* * * [Ujnless there is legislation to the contrary it is the inherent right of every tribunal to reconsider its own decisions within a short 'period after the making of *101 the decision and before an appeal lias been taken or other rights vested. * * *[16] [Emphasis supplied.]
In discussing the first reconsideration action, it will be remembered, we stated that, while an officer remained on duty, the Army had a continuing interest in his efficiency. We accordingly viewed the regulations as authorizing reconsideration actions at any time, since rulings by the ADB retaining the officer on active duty did not irrevocably fix the rights and obligations of the parties.
However, the same considerations do not apply to the third action. Once an officer is ordered relieved, the positions of the parties do become fixed: the officer, from the date of his separation, no longer has the right to continue to serve or to receive remuneration therefor; the Army is no longer obligated to retain the officer or to pay for his services. The interest of the Army in the officer’s continued efficiency terminates, as does the desirability of periodic revaluations or screenings. It would therefore seem that the usual rule requiring reconsideration within a short period after the initial decision should apply. As a result, the time interval between the first and third proceedings might have occasioned an unreasonable prolongation of the initial action.
We are not controlled by this possibility. From all indications, the ABCMB, did. not consider this point.. The defendant did not raise this issue here, nor was it in any position to do so. The third proceeding was initiated by the Career Branch, apparently because it was unaware of the previous ADB action regarding plaintiff and upon the mistaken assumption that plaintiff was still on active duty.[17] The defendant should not now be heard to assert the improper prolongation of the case by proceedings it instigated itself. The Career Branch’s apparent ignorance of the pre *102 vious ADB proceedings does not change that result. Initiating all three actions, the Career Branch sought the termination of plaintiff’s agreement on the basis of her record. The Career Branch is therefore chargeable with at least a general knowledge of the career of the officer it had determined was unfit, knowledge which a modest amount of diligence in searching plaintiff’s record would have given it. We find that the third ADB action was not invalid because unreasonably out of time.[18]
The record does not show whether the ADB considered evidence in addition to the submissions of the Career Branch. In its request, in addition to stating certain general facts about plaintiff, the Career Branch apparently relied only on plaintiff’s efficiency ratings. It will be remembered, though, that plaintiff had asked the Adjutant General in one of her letters to inform the ADB of her request for reconsideration and reinstatement, but there is no indication that this was done. However, the guidelines and criteria prescribed by letter in 1960 by the Secretary of the Army reveal that the ADB was under an obligation to examine records in addition to the efficiency ratings, and not to rely solely on the recommendation of the Career Branch:
4. In a modern peacetime Army the standards for retention on active duty must 'be higher than the standards during periods of emergency or expansion. It is recognized that detailed criteria cannot be established but that the judgment and experience of members of the career branches and the board must be employed to insure that individuals selected for retention are those having the greatest potential. To achieve this aim the following points are submitted as guidance:
*103 ■a. The weight to be given derogatory information must be determined by the collective judgment of the 'board. However, greatest weight should be given to the most recent years of service. Undue consideration should not be given to unfavorable comments which appear early in an officer’s career but which are followed by continuous satisfactory performance of duty.
í£ sfc ífc sfc
c. “Adverse matter” that can be considered in personnel actions must be a part of official records. * * * [Emphasis supplied.]
d. In submitting cases for your review and determination as to retention or release from active duty, the chiefs of the arms and services will not brief the board. The review and a determination therefrom is the prerogative of the board based on qualified information in official records. [Emphasis supplied.]
* * % *
6. It cannot be overemphasized that the wide experience and good judgment of the members of the Department of the Army Active Duty Board must be depended upon to insure an effective, vigorous officer corps without jeopardizing the rights of individuals.
The emphasis in the guidelines is upon the exercise of the board members’ experience and judgment to determine from the records whether an individual should be retained or relieved. Although more recent performance is to be given greater weight, the board is entitled to consider an officer’s past record. In substance, then, the ADB is charged with evaluating the likelihood of an officer’s satisfactory future performance in the light of his entire career.
Obviously, the records most helpful in making a determination of an officer’s ability are his efficiency records. But the officer’s general history in the service, with all its ramifications, is necessary and relevant to put the reported efficiency ratings in perspective. The guidelines clearly contemplate this when they speak in terms of “official records,” not just efficiency ratings.
Paragraph 4d quoted above similarly provides that the ADB is not to be briefed by “the chiefs of the arms and services.” Consequently, the board could not accept the informa *104 tion supplied by the Chief of the Career Branch without independently verifying it. It is the prerogative of the ABB alone to review the records to determine an officer’s qualifications.
The board, therefore, must be expected to examine all the pertinent records. Obviously, for the ABB to ignore relevant and important aspects of an officer’s career in making a determination'of fitness would be improper. In the absence of any evidence to the contrary, it must be presumed that the ABB performed its official duties properly.[19] As a result, the court is compelled to conclude that the ABB considered all pertinent records, not just the efficiency ratings.
As the evidence before the ABCMB. indicated,[20] plaintiff’s standard 201 file disclosed the fact that plaintiff had been relieved from active duty by virtue of action by the ABB. What was discoverable by the ABCMB by an examination of the records pertaining to plaintiff must also have been discoverable by the ABB. The presumption in favor of the validity of official acts[21] precludes a finding here that the ABB examined the records in so negligent or cursory a manner that some evidence of the second proceeding was not discovered. We find, therefore, that the ABB examined plaintiff’s records and was aware of its prior action when it ruled in plaintiff’s behalf. Being aware of its second proceeding in the case, the ABB obviously must have considered whether the reversal in that proceeding of its first decision was valid and correct. Since the decision of the board in June 1960 was the result of a valid reconsideration action, that third ruling is entitled to finality. The ABCMB decision was accordingly contrary to law because it failed to adhere to the ABB decision by which it was bound. Plaintiff’s records should have been corrected to show that she had never been relieved from active duty as an officer.
For the above reasons, the court concludes that plaintiff is entitled to recover the pay to which she would have been *105 entitled liad she remained on active duty as a major with her length of service from October 19, 1959, until September 1, 1964, less the pay she received in her enlisted capacity from January 14, 1960, until September 1, 1964. Judgment is entered for plaintiff accordingly, with the amount of recovery reserved for further proceedings pursuant to Buie 47 (c).

This case was referred to Commissioner W. Ney Evans, to whom the court is indebted for his submission of a memorandum opinion pursuant to Rule 57 (a). Although, with minor modifications and additions, the commissioner’s findings of fact are adopted herein, the court, for the reasons stated in the opinion, does not accept his ultimate determinations of fact or his recommended conclusion of law.

 Reserve Components—Officer Periods of Service on Active Duty, AR 135-215, para. 7b, Dept. of the Army, May 27, 1955 [hereinafter cited as AR 135-215],

 Although a copy of AR 135-173 was part of the record before the commissioner, a copy of AR 135-215 was not. Subsequent to oral argument in this case, the court through its Secretary requested the defendant to supply copies of any and all regulations pertaining to the scope, duties, and functions of the ADB. In prompt response to that request, defendant submitted copies of AR 135-215, AR 135-173, and of letters sent on January 27, 1959, and May 13, 1960, to the respective Presidents of the ADB by order of the Secretary of the Army. These letters enumerated the duties of the ADB and the general guidelines and criteria for reviewing records to determine whether officers should be retained or released from active duty. Since neither of the parties has suggested the applicability of any other regulations, It is assumed that all pertinent ones are now before us.

 Reserve Components — Relief of Officers and Warrant Officers from Active Duty, AR 135-173, paras. 50 and 51, Headquarters, Dept. of the Army, Dec. 5, 1958 [hereinafter cited as AR 135-173].

 AR 135-215, para. 10c(1), also so provides. The finality attributable to ADB decisions is further emphasized by the following language in both letters sent by order of the Secretary of the Army to the Presidents of the ADB :
“5. The board findings for either retention or relief from active duty are final unless otherwise directed for particular type actions.” See findings Nos. 3 (e) and (d) infra.

 See Wason v. United States, 179 Ct. Cl. 623 (1967) ; cf. Friedman v. United States, 141 Ct. Cl. 239, 158 F. Supp. 364 (1958).

 E.g., Hamlin v. United States, 183 Ct. Cl. 137, 391 F. 2d 941 (1968).

 AR 135-215, para. 10c (1).

 The letters to the Presidents of the ADB from the Secretary clearly grant such authority (see note 2 supra) :
“3. The Department of the Army Active Duty Board will consider, but will not be limited to, the following types of cases:
*****
“d. Revocation of indefinite service agreements under the previsions of AR 135-173.”

 See, e.g., Stephens v. United States, 174 Ct. Cl. 365, 370, 358 F. 2d 951, 953 (1966) ; Oleson v. United States, 172 Ct. Cl. 9, 13 (1965) ; finding No. 12 infra.

 Confederated Tribes of Warm Springs Reservation v. United States, 177 Ct. Cl. 184 (1966) ; Dayley v. United States, 169 Ct. Cl. 305 (1965). See generally 2 Davis, Administrative Law § 18.09 (1958).

 See Confederated Tribes of Warm Springs Reservation v. United States, 177 Ct. Cl. 184 (1966) ; C. J. Langenfelder & Son, Inc. v. United States, 169 Ct. Cl. 465, 341 F. 2d 600 (1965) ; Dayley v. United States, 169 Ct. Cl. 305, 308-09 (1965) ; 2 Davis, supra note 10.

 This was the view expressed by the Executive Secretary of the ABCMR in a letter written to plaintiff's counsel on February 2, 1965, which advised that plaintiff’s second application to the ABCMR for correction of her records had been denied. See finding No. 12 infra.

 Instead of submitting a brief in response to plaintiff's exceptions to the commissioner’s report and accompanying brief, the defendant chose to rely on the presumption of correctness accorded the commissioner’s findings and submitted a statement to that effect pursuant to Rule 62 (b) t

 See Dayley v. United States, 169 Ct. Cl. 305, 308-09 (1965) ; 2 Davis, supra, note 10.

 “Whenever a question concerning administrative, or judicial, reconsideration arises, two opposing policies Immediately demand recognition: the desirability of finality, on the one hand, and the public interest in reaching what, ultimately, appears to be the right result on the other [footnote omitted], * * *” CAB v. Delta Air Lines, Inc., 367 U.S. 316, 321 (1961).

 Dayley v. United States, 169 Ct. Cl. 306, 308 (1965).

 As stated previously, tlie last request from the Career Branch for reconsideration made no mention of the second proceeding, of plaintiff’s release from active duty, or her enlistment in the Regular Army. There does not appear to be any conceivable reason why the Career Branch would want to have plaintiff relieved when in fact she was no longer on active' duty. This fact, plus the tone and language of the request, compels the conclusion that the Career Branch somehow confused the records, believed plaintiff still to be on active duty, and was unaware of the reconsideration action it had instituted the previous year. See finding No. 6 infra.

 The regulations established no rules to guide the ADB in entertaining requests for reconsideration. The absence of prescribed standards of review, however, does not necessarily mean that the ADB was arbitrary in changing its prior position. From the evidence, the court has no way of knowing whether the ADB discovered fresh evidence when searching plaintiff’s records. In addition, it is noted that the guidelines were changed somewhat between 1959 and 1960. Compare finding No. 3(c) with finding No. 3(d). Although these changes appear to be essentially procedural in form, they may have resulted from a shift in administrative policy. Either of these grounds could conceivably warrant a reconsideration of a prior decision under typical formulations of the traditional standards for reconsideration or rehearing. Bee, e.g., Rules 68 and 69 of this court.

 See Holman v. United States, 181 Ct. Cl. 1, 383 F. 2d 411 (1967) ; Harrington v. United States, 161 Ct. Cl. 432 (1963).

 Findings Nos. 9 (b) and (c) infra.

 See note 19 supra.