Skelton, Senior Judge,
dissenting:
I respectfully dissent, as I do not think we have the power or authority to remand this case to the Secretary of the Army, nor to require him to order the Correction Board or the Active Duty Board or any other tribunal to grant the plaintiff a hearing on the issues raised by the plaintiff in this case.
Our remand authority is found in 28 U.S.C. § 1491 where it is stated that the Court of Claims may "remand appropriate matters to any — administrative body” in a case "within its jurisdiction.” The Supreme Court held in United States v. Testan, 424 U.S. 392, 404 (1976):
"* * * The remand statute, thus, applies only to cases already within the court’s jurisdiction.”
Therefore, it is necessary to determine whether the instant case is within our jurisdiction. If it is not, we have *933 no authority to remand the case to the Secretary of the Army.
Our jurisdiction is determined by Title 28 U.S.C. § 1491 and by the decisions of the Supreme Court in United States v. King, 395 U.S. 1 (1969), and United States v. Testan, supra. In both of those cases, we ordered them remanded to administrative agencies. The Supreme Court held that we erred in doing so because the cases were not within our jurisdiction.
In United States v. King, supra, the Supreme Court held that we could only enter judgments for "presently due money damages from the United States,” and that we had no equity powers under which we could render a declaratory judgment. The Court said at 3:
"The foregoing cases decided by this Court therefore clearly show that neither the Act creating the Court of Claims nor any amendment to it grants that court jurisdiction of this present case. That is true because Colonel King’s claim is not limited to actual, presently due money damages from the United States.
Before he is entitled to such a judgment he must establish in some court that his retirement by the Secretary of the Army for longevity was legally wrong and that he is entitled to a declaration of his right to have his military records changed to show that he was retired for disability. This is essentially equitable relief of a kind that the Court of Claims has held throughout its history, up to the time this present case was decided, that it does not have the power to grant.”
In Testan, the Court made it clear that unless a claimant bases his claim on the Constitution, a contract, a rule or regulation of an executive department, or a statute that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained,” the Court of Claims does not have jurisdiction of his claim.
In the instant case, the plaintiff bases his claim on an alleged violation of the Correction Board Act, 10 USC § 1552, by the Correction Board in failing to "correct” his service record. We held in Sanders v. United States, 219 Ct. Cl. 285, 594 F. 2d 804 (1979), that a "partial correction” by the Correction Board of a serviceman’s military record, without making him "whole”, was a violation of the *934 Correction Board Act and that "payment of money damages was thus clearly contemplated as stemming from corrections.” (Emphasis supplied). In my opinion, we went to the brink of our jurisdiction in the Sanders case in this type of situation. Title 10 USC § 1552 provides that a department "may pay” a claim for loss of pay, etc. "if, as a result of correcting a record — the amount is found to be due the claimant.”[1] (Emphasis supplied). Thus, the statute is limited by its own terms to a situation where the amount is due as a result of correcting a serviceman’s record, in which case the concerned department may pay such amount. In Sanders the Correction Board corrected the record, but did not find that any amount was due the claimant. In ordering the payment in that case, we went as far as our jurisdiction would allow us to go, since the statute provides that the concerned department "may pay” a claim found to be due "as a result of correcting a record.”
The instant case is clearly distinguishable from Sanders. Here, the Correction Board has not corrected Albrecht’s record nor changed it in any way. Consequently, no payment has been found to be due "as a result of correcting” his record. The Court of Claims does not have jurisdiction of Albrecht’s claim, because he cannot show that it is one for the payment of money presently due from the United States. As of now, Albrecht only has an alleged *935 moral or ethical claim of which we have no jurisdiction. His suit has been filed prematurely in this court. Not having jurisdiction, we do not have the authority under the remand statute to remand the case to the Secretary of the Army, nor to order him to require the Correction Board or the Active Duty Board or any other tribunal to grant Albrecht a hearing or to do anything else about the case.[2] The case is further distinguishable from Sanders because here Albrecht was discharged from the Army for inefficiency by an Active Duty Board whose decision under the Regulations cited below is final and binding on the Secretary of the Army and on the Correction Board and its decision cannot be reviewed by them. We have no power to order the Secretary of the Army to do something he has no authority to do.
Besides our lack of jurisdiction, there is another forceful and cogent reason why we do not have the authority to remand this case to the Secretary of the Army. I refer to our en banc decision in Biddle v. United States, 186 Ct. Cl. 87 (1968), in which we held that the decision of an Active Duty Board is final and binding on the Secretary and on the Correction Board and that it is not reviewable by them. We held in that case at 94-5:
"The statute [10 U.S.C. § 1552] plainly indicates that, within the bounds set thereby, the scope of the ABCMR’s authority is discretionary with the Secretary of the Army. The Secretary 'may’ correct errors 'when he considers it necessary.’ Consequently, the Secretary clearly may provide that the ABCMR will not consider applications for correction of records in situations where, in his opinion, the board’s intervention would be improper, duplicative, or otherwise unnecessary. In the instant context, AR 135-173 expressly states that the decisions of the ADB are final.4-When, as here, the Secretary has promulgated regulations which unequivocally entitle the decisions of a board other than the ABCMR to finality, the ABCMR is without authority to alter or review those decisions in any way and is bound by them,.5 And, of course, under familiar principles the Secretary’s discretion is limited by his *936 own regulations while they remain in force.6 (Emphasis supplied)
4 AR 135-215, para.10c(1), also so provides. The finality attributable to ADB decisions is further emphasized by the following language in both letters sent by order of the Secretary of the Army to the Presidents of the ADB:
'5. The board findings for either retention or relief from active duty are final unless otherwise directed for particular type actions.’ See findings Nos.3(c) and (d) infra.
5 See Watson v. United States, 179 Ct. Cl. 623 (1967); cf. Friedman v. United States, 141 Ct. Cl. 239, 158 F.Supp. 364 (1958).
6 E.g., Hamlin v. United States, 183 Ct. Cl. 137, 391 F. 2d 941 (1968).”
In the instant case, Albrecht was discharged from the Army by an Active Duty Board for inefficiency. Since the Secretary of the Army and the Correction Board are without authority under our decision in Biddle and under Army regulations to alter or even review that decision, it would be of no help to Albrecht to remand the case to the Secretary of the Army. Neither the Secretary nor the Correction Board can reinstate Albrecht into the Army nor award him back pay, because he is out of the Army by a final and unreviewable decision of the ADB. Under these circumstances, it would be an exercise in futility for us to remand the case to the Secretary of the Army.
It is well settled that the Secretary of an Executive Department is bound by his own Regulations so long as they remain in force. This is true notwithstanding the facts that the original authority was his and he has the power to change the Regulations. So long as he had not changed them they are binding on him. We held in Biddle:
"* * * And, of course, under familiar principles the Secretary’s discretion is limited by his own regulations while they remain in force.” 186 Ct. Cl. at 95.
See also Hamlin v. United States, 183 Ct. Cl. 137, 391 F. 2d 941 (1968); United States v. Nixon, 418 U.S. 683, 694-696 (1974); Service v. Dulles, 354 U.S. 363 (1957) (State Department); Cunningham v. United States, 191 Ct. Cl. 471, *937 423 F. 2d 1379 (1970) (Air Force); Piccone v. United States, 186 Ct. Cl. 752, 407 F. 2d 866 (1969) (Navy Dept.); Watson v. United States, 142 Ct. Cl. 749, 162 F. Supp. 755 (1958) (War Dept.); Hanifan v. United States, 173 Ct. Cl. 1053, 354 F. 2d 358 (1965) (Civil Service Commission); Vitarelli v. Seaton, 359 U.S. 535 (1959); and United States ex rel.Accardi v. Shaughnessy, 347 U.S. 260 (1954).
In United States v. Nixon, supra, the Supreme Court held, 418 U.S. at 695:
"So long as this regulation is extant it has the force of law. In United States ex rel. Accardi v. Shaughnessy, 347 US 260, 98 L Ed 681, 74 S Ct 499 (1954), regulations of the Attorney General delegated certain of his discretionary powers to the Board of Immigration Appeals and required that Board to exercise its own discretion on appeals in deportation cases. The Court held that so long as the Attorney General’s regulations remained operative, he denied himself the authority to exercise the discretion delegated to the Board even though the original authority was his and he could reassert it by amending the regulations. Service v Dulles, 354 US 363,388, 1 L Ed 2d 1403, 77 S Ct 1152 (1957), and Vitarelli v Seaton, 359 US 535, 3 L Ed 2d 1012, 79 S Ct 968 (1959), reaffirmed the basic holding of Accardi.
"Here, as in Accardi, it is theoretically possible for the Attorney General to amend or revoke the regulation defining the Special Prosecutor’s authority. But he has not done so. So long as this regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.”
By remanding the case to the Secretary of the Army, the majority is attempting to require the Secretary to sidestep the final decision of the Active Duty Board in a manner that is contrary to his own regulations. This is exactly what the Supreme Court said in the Shaughnessy case could not be done. There the court held, 347 U.S. at 267:
"* * * In short, as long as the regulations remain operative, the Attorney General denies himself the right to sidestep the Board or dictate its decision in any manner.”
*938 It is clear from our decision in the Biddle case that the Active Duty Board can reconsider a decision that it has made and that its decision on reconsideration is final and binding on the Correction Board and the Secretary of the Army. There we said, 186 Ct. Cl. at 104:
"We find, therefore, that the ADB examined plaintiffs records and was aware of its prior action when it ruled in plaintiffs behalf. Being aware of its second proceeding in the case, the ADB obviously must have considered whether the reversal in that proceeding of its first decision was valid and correct. Since the decision of the board in June 1960 was the result of a valid reconsideration action, that third ruling is entitled to finality. The ABCMR decision was accordingly contrary to law because it failed to adhere to the ADB decision by which it was bound. Plaintiffs records should have been corrected to show that she had never been relieved from active duty as an officer.” (Emphasis supplied)
Our Biddle decision shows two things, namely, (1) that the ADB can reconsider its prior decision and reverse it although a Correction Board or the Secretary of the Army cannot review or reverse such decision, and (2) if the ADB reverses its prior decision in a way that is beneficial to the serviceman, he can then go to the Correction Board and have his records corrected accordingly. This indicates the proper course for Albrecht to follow. He should himself go to the ADB and try to get it to reverse its prior decision discharging him from the Army. He can argue about the OERs before that Board. If he succeeds, he can then go to the Correction Board for the correction of his records and the relief he seeks.[3] All of this involves the internal affairs of the Army and we should have nothing to do with it.
Since Albrecht has not presented to this Court a claim for money presently due from the United States that is within our jurisdiction, the remand order of the majority is *939 also objectionable because it is a declaratory judgment that we have no authority to issue. The order, in effect, declares Albrecht’s rights based on his pleadings and on equity and holds that the Secretary of the Army must require the Correction Board or some other Board to again consider his case after it gives him a hearing. This amounts to an equitable decision not connected with or in aid of a money judgment of this Court, nor connected with a case within our jurisdiction.
In my opinion, the remand order is an interference and a meddling by this Court with the affairs of the Army where we have no business. We have only to read the decision of the Supreme Court in Orloff v. Willoughby, 345 U.S. 83 (1953), to realize that this is so. In that case the court held
"* * * [J]udges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to interfere in judicial matters.”
See also Harmon v. Brucker, 100 U.S.App. D.C. 190, 243 F. 2d 613 (D.C. Cir. 1957), rev’d on other grounds, 355 U.S.579 (1958), which held at 619 that:
"* * * Reason, flowing from the doctrine of the separation of powers, dictates that in many fields the administrative discretion of the executive branch and the legislative discretion of the legislative branch be not subject to interference or review by the courts. In no field is this doctrine more pertinent and important than in the operation of the armed forces. Provisions for the establishment and operation of such forces necessary to the security of this country are wholly legislative matters, and the administration of those forces is the very essence of executive action. The Constitution so provides. Only in the most extreme cases can the judiciary interfere in this area.”
The problem in this case is a fundamental one which will no doubt arise in future cases that will be filed in this court *940 as a result of the decision of the majority. The problem involves the question of whether this court or the Secretary of the Army is to be allowed to run the Army. Obviously, Congress has assigned this duty to the Secretary, and we have no authority or responsibility with reference to it. The majority errs when it interferes with the legitimate Army matter involved in this case.
The majority indicates that under our Biddle decision the Correction Board can override an Active Duty Board decision that is unfavorable to a serviceman but cannot do so if the decision is favorable to him. I find nothing in the Biddle decision that supports any such theory. On the other hand, both the Biddle opinion and the Regulations make an ADB decision final whether it is favorable or unfavorable to the claimant.
Also, the majority concludes that the Correction Board "entertained” the plaintiffs case when it denied his appeal and that this indicated that the Correction Board considered that it had the power to change the decision of the Active Duty Board. I do not agree to either theory. The Board did not "entertain” plaintiffs case when it denied his appeal. It did not give him a hearing. It is more likely that the Board denied the appeal for lack of jurisdiction without any consideration of the merits.
Furthermore, the Board’s denial of the appeal in no way indicated that the Board considered that it had the power to change the decision of the Active Duty Board. After all, when the appeal was filed the Board had to dispose of it in some way. As far as the record shows, the Board did so by denying the appeal without considering it on the merits. It appears that the majority is reading too much into this action (actually, lack of action) by the Board.
Accordingly, I would grant defendant’s motion for summary judgment and dismiss plaintiffs petition without prejudice.

 Title 10 U.S.C. § 1552 provides in pertinent parts: "(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. * * * Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.
"(c) The department concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section the amount is found to be due the claimant on account of his or another’s service in the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be. * * *
The Senate report on the bill, adding the payment provisions to 10 U.S.C. § 1552, stated:
'‘The purpose of the proposed legislation, as amended, is to authorize the Secretaries * * * to make certain payments which become due as a result of action taken by the respective Boards for the Correction of Records * * [S.Rep.No.923, 82d Cong., 1st Sess., reprinted in [1951] U.S. Code Cong. & Ad.Serv.2469.] (Emphasis supplied).

 The Correction Board was not required to give a hearing to Albrecht. Therefore, his argument in that regard is unpersuasive.

 If the ADB reversed its decision, the Correction Board could then, and not until then, reinstate Albrecht and award him back pay. This authority is given to the Correction Board by 10 USC 1552(d) which provides:
”* * * Without regard to qualifications for reenlistment or appointment or reappointment, the Secretary concerned may reenlist a person in, or appoint or reappoint him to, the grade to which payments under this section relate.”
Of course, the Secretary exercises this authority through the Correction Board in a proper case. Albrecht’s case is not such a case in its present status.