Harold W. VAN ALLEN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 05–166 C.

United States Court of Federal Claims.

Feb. 27, 2006.

58

Harold W. Van Allen, Pro Se.

Tara K. Hogan, U.S. Department of Justice, Civil Division, Washington, D.C., for defendant, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Mark Melnick, Assistant Director, and Lt. Marc Rosen, of counsel.

## OPINION

MEROW, Senior Judge.

Plaintiff, Harold W. Van Allen, served on active duty in the United States Navy from 1973 to 1978. The prior Opinion and Order reported at 66 Fed.Cl. 294 (2005), dismissed plaintiff's health care reimbursement claims as not within the jurisdiction of this court to resolve and provided for the filing of a more detailed statement of plaintiff's military pay claims. On September 12, 2005, plaintiff filed an amended complaint seeking military disability retirement benefits retroactive to his 1978 Navy discharge. Defendant responded by filing a motion to dismiss the amended complaint as barred by the Statute of Limitations, 28 U.S.C. § 2501. The matter is before the court on defendant's motion.

## FACTS

Together with its motion to dismiss, defendant filed plaintiff's official personnel file and a certified copy of the five-volume administrative file of the Board for Correction of Naval Records ("BCNR"). This record covers the Board's proceedings on plaintiff's requests for record corrective action to change his 1978 discharge from active duty to disability retirement with resulting compensation. The following facts are derived from plaintiff's personnel file and the BCNR record.

Plaintiff served on active duty in the Navy from June 10, 1973 to June 20, 1978. He held the ranks of Ensign and Lieutenant Junior Grade ("LTJG"). He was qualified as a diver and during his active duty incurred several injuries while diving.

In January of 1978 the Commanding Officer, USS Bolster (ARS 38), the ship to which LTJG Van Allen was assigned, commenced the process for his detachment for unsatisfactory performance. The Commanding Officer's memo concluded with the recommendation that:

LTJG VAN ALLEN's retention in the Naval Service should be brought under close scrutiny. It is the recommendation of this Command, that since LTJG VAN ALLEN has proven himself either incapable or non-desirous of performance as an officer and of qualifying in those areas requisite for the Surface Warfare Officer, his reassignment to a new command would be impractical and non productive.

(Def. Mot. Dism.App. at DA 130, filed November 2, 2005.)

LTJG Van Allen's response on February 1, 1978, to his commanding officer's detachment request stated that "[t]he state of affairs under discussion is the culmination of approximately a year of personality conflict and philosophical differences on the part of myself and my superior officers." (*Id.* at DA 131.) LTJG Van Allen stated that he looked forward to fulfilling the remainder of his active duty service obligation "to the maximum extent allowed and in an honorable manner," and "will gladly accept no cost orders to another [d]iving billet anywhere." (*Id.*)

By memorandum, dated March 24, 1978, the Chief of Naval Personnel notified LTJG Van Allen that the request for his detachment for cause from the USS Bolster (ARS 38) had been accorded extensive review and was approved. The memo also notified LTJG Van Allen that "[b]ased upon an assessment of the needs of the Navy and your potential for continued service, there is no billet wherein your services can be utilized. Consequently, you will be in receipt of orders shortly directing your release to inactive duty." (*Id.* at DA 128.) On June 6, 1978, LTJG Van Allen was examined by Navy physician LCDR G. Weinstein and found qualified for separation. (*Id.* at DA 119.)

Plaintiff was honorably discharged from active duty on June 20, 1978. No medical reason was provided for this action and there *is no evidence in the record that a medical board or a physical evaluation board medically evaluated plaintiff.* Plaintiff was transferred to the Naval Reserve on inactive duty and was honorably discharged, effective November 10, 1979, pursuant to 10 U.S.C. § 6389, "for having twice failed of selection for promotion to the next higher grade." (*Id.* at DA 78.)

The BCNR file contains records indicating that commencing in 1983 plaintiff sought disability compensation from the Veterans Administration. (Vol. II, BCNR file at 00569.) Also, plaintiff filed an application for Social Security disability insurance benefits on September 17, 1985. (Vol. I, BCNR file at 00046.)

On February 25, 1985, plaintiff initially petitioned the BCNR to correct his record to reflect "the apparent fact that my release from active duty was inreality [sic] due to medical conditions. (undiagnosed systemic lupus E. symptoms)." Plaintiff requested that he "be considered for retro-active benefits from the above condition." (Vol. I, BCNR file at 271.) By a letter, dated March 21, 1986, the BCNR Executive Director notified plaintiff that the BCNR had denied the February 25, 1985 application as follows (in part):

A panel of three members of the Board for Correction of Naval Records, the names and final votes of whom will be furnished upon request, considered your application on 20 March 1986. Your allegations of error and injustice were reviewed in accordance with administrative regulations and procedures applicable to the proceedings of this Board. Documentary material considered by the Board consisted of your application, together with all material submitted in support thereof, your naval record and applicable statutes, regulations and policies. In addition, the Board considered the advisory opinion furnished by the Commander, Naval Medical Command dated 4 March 1986, a copy of which is attached, your rebuttal thereto and rating decisions of the Veterans Administration.

After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish probable material error or an injustice. In this connection, the Board substantially concurred with the comments contained in the advisory opinion. Accordingly, your application has been denied.

(Vol. I, BCNR file at 268.)

On January 29, 1988, plaintiff obtained an MRI of the head from the College of Physicians & Surgeons of Columbia University with the result that a large suprasellar arachnoid cyst was seen and reported to the referring physician, Dr. Lucien J. Cote, Department of Neurology. (Vol. I, BCNR file at 206.) By letter, dated June 24, 1988, plaintiff forwarded this information to the BCNR stating, in part, that "[t]his previously

undiagnosed large cyst can reasonably be assumed to have caused the neurologic active duty symptoms detailed at length in my numerous prior appeal letters and service medical/personnel records." (*Id.* at 202.) Plaintiff noted that his immediate concern was "gaining full disability retirement recognition for this cerebral lesion including CHAMPUS coverage." (*Id.*) The BCNR Executive Director responded by letter, dated November 7, 1988, that the material submitted was "carefully reviewed." (*Id.* at 199.) Plaintiff was informed that:

> The fact that you were diagnosed as having an arachnoid cyst in 1988 is not probative of your contention that you were unfit for further service in 1978. Inasmuch as you have not submitted any new material evidence of error or injustice in your record, your request must be denied.

(*Id.*)

By a letter, dated December 14, 1988, to the BCNR plaintiff objected to the November 7, 1988 response and, treating the submission as a request for reconsideration, it was denied by the BCNR on January 13, 1989. (*Id.* at 196–97.)

On May 16, 1990, Dr. Lucien J. Cote, Department of Neurology, College of Physicians & Surgeons of Columbia University, addressed a letter to Mr. Hyman Goodman, Attorney at Law, 115 Broadway, New York, NY, discussing Mr. Van Allen's neurological diagnosis. Dr. Cote concluded that it is his "medical opinion that Mr. van Allen's neurologic lesion (supra-sellar arachnoid cyst) existed while he was on active duty." In addition, Dr. Cote opined that plaintiff's "impairment was significantly exacerbated by service connected environmental stress factors." (*Id.* at 192.) On June 15, 1990, Mr. Goodman conferred with a BCNR official in Washington and turned over medical documents, such as Dr. Cote's letter, which it was agreed would be submitted to the Surgeon General for evaluation. (*Id.* at 191.) On July 24, 1991, the BCNR granted plaintiff's request for reconsideration. (*Id.* at 189.)

By memo, dated September 13, 1991, the BCNR requested the Specialty Advisor for Neurology, National Naval Medical Center to furnish comments and recommendations on plaintiff's request for correction of naval records. The BCNR file, plaintiff's service record, medical record and VA records were forwarded with the request. (*Id.* at 188.)

On March 31, 1992, Capt. Judith F. Morales, MC, USN, Specialty Advisor for Neurology, National Naval Medical Center provided a six-page report to the BCNR on former LTJG Harold W. Van Allen's application for correction of Naval Records. The report also forwarded copies of "McLaurin, et al. (Eds), *Pediatric Neurosurgery*, 2nd edition, W B Saunders Company (1989) Philadelphia, pp. 103–06"; "Pierre–Kahn, et al., 'Presentation and Management of Suprasellar Arachnoid Cysts,' *J Neurosurg 73*: 355–59 (1990)"; and " 'Psychiatric Presentation of an Arachnoid Cyst,' *J Clin Psychiatry 42*: 167–68 (1981)." This added material was provided for documentation of the comments made in the report. (*Id.* at 170.) While the detailed report prepared by Capt. Morales covered factors favorable and unfavorable to service connection, it indicated that the cyst most likely predated plaintiff's naval service and that it was possible to argue that plaintiff's poor naval performance "might have been secondary to a suprasellar arachnoid cyst." However, Capt. Morales stated that his problems would then "have had their onset while on active duty, been progressive, and would be expected to resolve following treatment of his cyst." (*Id.* at 175.) The report concludes that further documentation including that of any therapy provided plaintiff and its effects might be helpful in further clarifying the situation. (*Id.*)

The report prepared by Capt. Morales was made available to plaintiff and his counsel, Mr. Goodman, and they arranged to provide additional documentation. (*Id.* at 167.) By letter, dated August 27, 1992, Dr. Lucien J. Cote provided "specific comments regarding Captain Morales' medical advisory" and these were forwarded to the BCNR. (*Id.* at 162–63.) On October 20, 1992, surgeons at the Veterans Administration Medical Center, Albany, NY, performed a "right frontal craniotomy, fenestration of arachnoid cyst" procedure on plaintiff. (*Id.* at 135.) On March 2, 1993, plaintiff underwent an operation to

have a right VP shunt installed. (*Id.* at 133.) These medical records were provided to the BCNR. (*Id.* at 131–44.)

By a memorandum, dated April 28, 1994, Capt. Morales provided a supplemental report to the BCNR covering the further medical records submitted to the Board. The report noted, by referencing Dr. Cote's August 27, 1992 letter which reported plaintiff's statements of problems he experienced, that plaintiff claims these problems "were service exacerbated and related to his congenital suprasellar subarachnoid cyst and long-standing hydrocephalus." (*Id.* at 94.) Capt. Morales concluded that plaintiff's claim of service exacerbation should be denied, as there is no evidence that plaintiff's hydrocephalus was aggravated by his active duty service. (*Id.* at 96.) The findings in the report's conclusion are as follows:

### CONCLUSION

1. Mr. Van Allen underwent two surgical procedures: (1) a non-successful cyst fenestration in October 1992, yet he reported clinical improvement until two months prior to (2) a V.P. shunt placed in March 1993 after which he is still having headaches that required an ER visit in May 1993.

2. It is concluded that his condition was pre-dated to his entrance to active duty service in June 1973. His hydrocephalus was chronic and mild, probably not under pressure as in all his radiologic studies, he has generous sulci for a person of his age. This will strongly speak against a lot of intracranial pressure since otherwise the reverse would have been seen (sulci that are effaced and not prominent). Unfortunately no CSF intraoperative pressure were recorded to confirm this finding, but the fact that the CSF was "free flowing" also speaks against a lot of pressure.

(*Id.* at 95.)

The April 28, 1994 report was forwarded to plaintiff's counsel on May 25, 1994. (*Id.* at 93.)

On June 1, 1995, the BCNR sitting in executive session voted to deny plaintiff's application on reconsideration for record correction. (*Id.* at 88.) By letter, dated June 9, 1995, the BCNR Executive Director notified plaintiff that his application was denied as follows (in part):

A three-member panel of the Board for Correction of Naval Records, sitting in executive session, considered your application on 1 June 1995. Your allegations of error and injustice were reviewed in accordance with administrative regulations and procedures applicable to the proceedings of the Board. Documentary material considered by the Board consisted of your application, together with all material submitted in support thereof, your naval record and applicable statutes, regulations and policies. In addition, the Board considered the advisory opinions furnished by the Bureau of Medicine and Surgery, dated 31 March 1992 and 28 April 1994, and the information submitted in rebuttal thereto. A copy of each opinion is attached.

After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish the existence of probable material error or injustice. In this connection, the Board substantially concurred with the comments contained in the advisory opinions.

. . . .

In the absence of evidence which demonstrates that you were unfit for duty at the time of your release from active duty, the Board was unable to recommend any corrective action in your case. Accordingly, your application has been denied. The names and votes of the members of the panel will be furnished upon request.

(*Id.* at 86–87.)

Following the BCNR's denial on June 1, 1995, of plaintiff's application for correction of records upon its reconsideration of the matter, plaintiff continued to submit communications to the BCNR which were construed by the Board as requests for reconsideration and were denied on that basis. (*Id.* at 69–70, 81–82.) On December 7, 2000, plaintiff submitted an application to the BCNR for correction of the records to provide his retroactive placement on the permanent disability

retirement list. (*Id.* at 39.) In support of his application, plaintiff forwarded a copy of a Social Security Administration Administrative Law Judge decision, dated September 27, 2000, ruling that for Social Security benefits, Mr. Van Allen was entitled to a period of disability commencing June 30, 1978 through December 31, 1986. The September 27, 2000 decision also incorporated an earlier decision that plaintiff was disabled as of October 15, 1991. (*Id.* at 45.) The September 27, 2000 decision found that Mr. Van Allen did engage in substantial gainful activity as of January 1, 1987 through October 15, 1991. (*Id.* at 45–50.)

By letter, dated January 25, 2001, to plaintiff the BCNR treated plaintiff's December 7, 2000 application as a further request for reconsideration noting, among other items, that the Social Security Administration Administrative Law Judge "relied upon evidence previously rejected by this office." The BCNR's letter concluded as follows:

> In view of the foregoing, further review of your case is not warranted and your request for consideration must be denied. Over the past several years, you have made hundreds of separate submissions to the Board, none of which contained any new material evidence. Future correspondence from you which is not accompanied by new material evidence will be filed without action or reply. Please note that the Board is a civilian body, and not under the cognizance or control of the Chief of Naval Operations.

(*Id.* at 35.)

Plaintiff's final reconsideration request was submitted to the BCNR on July 2, 2003 and reconsideration was disapproved and plaintiff was so notified by a letter, dated August 8, 2003. (*Id.* at 1–3.)

The Complaint was filed in the instant case on January 25, 2005.

## DISCUSSION

Plaintiff's amended complaint seeks a determination correcting his June 20, 1978 honorable discharge from active duty service as a Navy LTJG to provide, instead, for disability retirement with resulting compensation pursuant to 10 U.S.C. § 1201.

Defendant seeks dismissal of plaintiff's amended complaint asserting that the claim is barred pursuant to 28 U.S.C. § 2501, which provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."

■ The first issue to resolve is when the disability retirement claim plaintiff pleads first accrued. While there are occasions when a claim for military disability retirement pay will accrue on the date the person was discharged from the service, the general rule is that such a claim accrues on the date a military board authorized to determine entitlement acts in this regard or refuses to act. *Chambers v. United States,* 417 F.3d 1218, 1226 (Fed.Cir.2005).

■ Defendant asserts that plaintiff's disability retirement pay claim accrued at the time of his discharge from active duty on June 20, 1978. An exception to the general rule that a disability retirement pay claim accrues when an authorized military board acts or refuses to act occurs in the situation where, at the time of separation from military service, the service member knew he or she was entitled to disability retirement as a result of a service connected disability that was not a result of his or her intentional misconduct, but the member does not request or receive action by an authorized board. In this circumstance, the claim for disability retirement compensation accrues upon the separation from the service. *Real v. United States,* 906 F.2d 1557, 1561–63 (Fed. Cir.1990). Relying on his affidavit, sworn March 31, 1995, that plaintiff submitted to the BCNR, defendant argues that the *Real* exception to Board action or refusal to act accrual applies in that plaintiff asserts he informed "Dr. Weinstein" of his health complaints during his separation physical examination in June of 1978 and requested further tests. Plaintiff also states that he requested disability pay eligibility "during the administrative phase of my release from active duty." (Vol. V, BCNR file at 1543.)

■ However, on the record before the court it cannot be concluded that, upon his separation, plaintiff possessed the level of knowledge required to cause a claim for disability retirement pay to accrue at that point, absent Board action or refusal to act. During the administrative process that resulted in his separation from active duty, plaintiff had indicated his wish to remain on active duty and had stated that he "will gladly accept no cost orders to another [d]iving billet anywhere. . . ." (Def. Mot. Dism.App. at DA 131.) Absent the problematic statements in his 1995 affidavit the record is bereft of any evidence that upon his separation in 1978, plaintiff knew, or had reason to know, that he was entitled to disability retirement due to a service-connected permanent disability not the result of his intentional misconduct. In this circumstance, the *Real* exception does not apply and plaintiff's cause of action for disability retirement benefits accrues when the first competent board, here the BCNR, issued a final determination on his claim. *Chambers, supra,* at 1227.

Plaintiff initially sought BCNR action to correct his records by filing a petition on February 25, 1985, to obtain retroactive benefits for asserted "undiagnosed systemic lupus E. symptoms." (Vol. I, BCNR file at 271.) This petition was denied by the BCNR on March 21, 1986. (*Id.* at 268.) Since plaintiff's claim did not accrue at the time of his discharge in 1978, the March 21, 1986 decision by the BCNR, a competent board, started the statute of limitations to run. *Chambers v. United States,* 417 F.3d at 1227.

■ After the existence of a suprasellar arachnoid cyst was discovered in 1988, plaintiff, through counsel, submitted additional medical records and on July 24, 1991, the BCNR determined to reconsider. (Vol. I, BCNR file at 189.) This raises the question whether this reconsideration action by the BCNR served to deprive its prior decision of finality such that the statute of limitations would no longer commence to run as of March 21, 1986. Usually, a relatively short or reasonable period of time is contemplated for reconsideration of an administrative decision. *Cooley v. United States,* 324 F.3d 1297, 1305 (Fed.Cir.2003); *Biddle v. United States,*

186 Ct.Cl. 87, 100–01 (1968); *Bookman v. United States,* 197 Ct.Cl. 108, 112, 453 F.2d 1263, 1265 (1972); *Friedman v. United States,* 159 Ct.Cl. 1, 24, 310 F.2d 381, 396 (1962). For relief from judgments in federal courts on the basis of newly discovered evidence, the rule provides that a motion be filed "not more than one year after judgment, order, or proceeding was entered or taken." Fed.R.Civ.P. 60(b). To affect finality of the judgment, such a motion must be filed within ten days after the entry of the judgment. Fed.R.Civ.P. 59; Fed. R.App. P. 4(a)(4)(A)(vi); *See Kraft v. United States,* 85 F.3d 602 (Fed.Cir.1996); *Dayley v. United States,* 169 Ct.Cl. 305, 309 n. 2 (1965). The period of time between the March 21, 1986 BCNR decision denying plaintiff's record correction and the 1988 reconsideration application, resulting in the June 24, 1991 decision to reconsider, clearly exceeds the short or reasonable period which serves to deprive an administrative decision of finality for statute of limitations purposes. *Gratehouse v. United States,* 206 Ct.Cl. 288, 298, 512 F.2d 1104, 1109 (1975) ("the time period would be measured in weeks, not years."). This is particularly the case when the matter at issue is a determination whether a service member was unfit for duty at the time of his release from the service because of a physical disability, that is permanent and stable and is not the result of the member's intentional misconduct or willful neglect, so that the member was entitled to disability retirement compensation. 10 U.S.C. § 1201; *Fisher v. United States,* 364 F.3d 1372, 1379 (Fed.Cir. 2004).

As is often the case when a Correction Board is the first board to act, such as in the instant case, a lengthy time elapsed after plaintiff's separation from active duty in 1978 until the BCNR decision on March 21, 1986. In formulating the rule that the cause of action for military disability retirement compensation accrues with the decision of the first competent board to act, it was recognized that there was a "double need to have the judicial determination of the facts take place at a moment not too far removed from the actual events and also to allow claimants an adequate (but not overly long) period to bring suit . . . ." *Friedman v. United States,*

159 Ct.Cl. at 35, 310 F.2d at 403. Six years from the BCNR's March 21, 1986 decision provided an adequate period in which to file suit. It is concluded that the reconsideration by the BCNR which resulted in the decision, dated June 9, 1995, again denying record correction, did not serve to deprive the prior March 21, 1986 BCNR decision of finality for the purposes of filing suit within the limits set by 28 U.S.C. § 2501.

■ Plaintiff, however, asserts that he was cognitively impaired such as to toll the running of the statute of limitations pursuant to the "legal disability" provision of 28 U.S.C. § 2501 or equitable tolling principles. Plaintiff places reliance in this respect on the "brain surgery" which is discussed in the BCNR records and the Social Security Administration Administrative Law Judge Decision, dated September 27, 2000, providing Disability Insurance Benefits. With respect to the surgery the neurosurgeon's discharge summary on the right frontal craniotomy and fenestration of arachnoid cyst procedure noted "[t]he patient is well able to manage his Veterans Administration funds." (Vol. I, BCNR file at 160.) Moreover, plaintiff was represented by counsel in submissions subsequent to March 21, 1986 and demonstrated diligence and competence in numerous submissions to the BCNR. The record does not support a conclusion that plaintiff suffers from a disability which rises to the level required to toll the running of the statute of limitations. *Barrett v. Principi,* 363 F.3d 1316, 1321 (Fed.Cir.2004); *Goewey v. United States,* 222 Ct.Cl. 104, 112, 612 F.2d 539, 544 (1979); *Ware v. United States,* 57 Fed.Cl. 782, 788 (2003).

The award of Disability Insurance Benefits to plaintiff required a finding that he was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 416(i)(1)(A). This work related standard is not the same as that required for tolling the statute of limitations, which requires the person to have a disability which renders him "incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities." *Goewey,* 222 Ct.Cl. at 112, 612 F.2d at 544.

Moreover, plaintiff has established no valid basis for equitable tolling of 28 U.S.C. § 2501, if such tolling were held to be available in the circumstances involved. Plaintiff has not been induced or tricked into allowing the filing deadline to pass. *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Martinez v. United States,* 333 F.3d 1295, 1318 (Fed. Cir.2003).

Plaintiff filed his complaint in this matter on January 25, 2005. This was considerably beyond the March 21, 1992 date which represents six years after the BCNR decision of March 21, 1986, the first competent board ruling which caused plaintiff's cause of action for military disability compensation to accrue. Thus the pleaded claim is barred by 28 U.S.C. § 2501.

Were it to be held that plaintiff's cause of action for disability retirement compensation was not barred by 28 U.S.C. § 2501, then the question to resolve would be whether the BCNR decision(s) denying record correction to provide this compensation is arbitrary, capricious, contrary to the law, or unsupported by substantial evidence. *Chambers,* 417 F.3d at 1227. In this respect it must be concluded that the BCNR action had substantial evidentiary support. The medical examination plaintiff received upon his 1978 discharge from active duty provides no basis for a disability finding at that time. Moreover, the medical reports provided to the BCNR by the Navy Medical Center's Specialty Advisor for Neurology carefully analyze plaintiff's condition and provide sufficient evidentiary support for the Board's conclusion denying the record correction plaintiff sought. In this circumstance, the BCNR action denying record correction is not arbitrary, capricious or contrary to law and is supported by substantial evidence. *Id.* Were plaintiff's claim not barred by 28 U.S.C. § 2501 it would still fail on the basis of the adequately supported BCNR action denying the relief sought.

## CONCLUSION

For the reasons discussed above, it is concluded that plaintiff's cause of action is barred by 28 U.S.C. § 2501 and it is **ORDERED** that the Complaint, as amended, shall be **DISMISSED** with no costs to be assessed.